HAZEL L. SANDERSON, GUARDIAN AND CURATRIX OF THE PERSON AND ESTATE OF WILLIAM E. SANDERSON, A PERSON OF UNSOUND MIND v. NEW YORK LIFE INSURANCE COMPANY, A CORPORATION.—194 S. W. (2d) 221.

Kansas City Court of Appeals. April 22, 1946.

*Hugh B. Downey, Harry A. Morris, A. N. Abrams* and *John M. P. Miller* for Hazel L. Sanderson, appellant.

*Richard S. Righter* and *Lathrop, Crane, Sawyer, Woodson &
Righter* for appellant.

692

CAVE, J.—This is an action on two insurance policies for disability benefits and for penalties for vexatious refusal to pay. The petition contained three counts; the first two on the policies, and the third for penalties and attorneys' fees. The case was tried without a jury. No findings of fact or declarations of law were asked or made. The trial court rendered judgment for plaintiff on the first count for $248; on the second count for $1,242.32, and for the defendant on the third count. Defendant appealed from the judgment on the first and second counts, and plaintiff appealed from the judgment on the third count. By agreement, the appeals have been consolidated and will be disposed of in one opinion.

The facts are stipulated and may be summarized as follows: William E. Sanderson was the insured under two policies issued by defendant. The first, dated August 22nd, 1918, provided $1,000 life insurance, double indemnity for accidental death, and one-tenth of the face of the policy, $100, annually to the insured on the anniversary of the policy, upon receipt of *due proof* of *total* and *permanent disability*. The second policy, dated October 9th, 1931, provides $4,000 of life insurance, double indemnity for accidental death, and $40 per month upon receipt of *due proof* of *total* and *permanent disability*. Both policies provide for waiver of premiums during disability. The provisions of the policies directly involved are:

First Policy:

"3. . . . . The Company may at any time and from time to time,

but not oftener than once a year, *demand due proof of such continued disability,* and upon failure to furnish such proof, or if it appears that insured is no longer wholly disabled as aforesaid, no further premiums shall be waived nor income payments made.'' (Italics ours)

Second Policy:

''Before making any income payment or waiving any premium, .the Company may *demand due proof of the continuance of total disability,* but such proof will not be required oftener than once a year after such disability has continued for two full years. If such proof shall not be furnished, or if at any time the Insured shall become able to perform any work, follow any occupation, or engage in any business for remuneration or profit, no further income payments shall be made nor premiums waived. . . .'' (Italics ours)

Sanderson was adjudged insane by the Jackson County Probate Court September 4, 1934, and plaintiff and his wife and beneficiary in each policy, was appointed his guardian. He was confined to State Hospital No. 2 for the insane, at St. Joseph, Missouri, from that time until May 13, 1942. On that date he disappeared from the hospital and although plaintiff and State authorities have made a thorough search in an effort to find him, he has not been seen or heard from and his present whereabouts are unknown.

The Company waived the premiums and paid disability benefits to the guardian from 1934 until 1943. On July 16,1943, the Company wrote Mrs. Sanderson concerning the two policies and advised her that under the terms of the disability benefit provisions, benefits were payable during the continuance of total disability, and that continuance of such benefits was subject to the continuance of such disability and that, under the policies, the Company had the right to ''demand due proof of such continued disability and upon failure to furnish such proof, or if it appears that insured is no longer wholly disabled as aforesaid, no further premiums shall be waived nor income payments made. The Company now has under consideration the question of the continuance of the disability benefits. As you know, it has been some time since we have been furnished with proof of Dr. Sanderson's continued total disability. Therefore, we are enclosing herewith a form #4 to be completed by the insured's present attending physician. Upon receipt of the aforementioned report, we shall be pleased to give the claim our further consideration with a view to continuing benefits.''

Form #4 asked, among others, the following questions: ''3. Where can the insured be called on in person now? 4. How long have you been the medical attendant or adviser of the insured? 5. Is he now under your treatment? 6. For what injury, infirmity or disease causing disability have you treated or advised the insured during the last twelve months? 7. (a) Is the insured wholly disabled at the

present time? (b) If he is, how long, to your knowledge, has he been prevented, by reason of his disability, from engaging in any occupation whatsoever for remuneration or profit? 8. What is your opinion as to whether or not the insured by reason of his disability will be permanently, continuously and wholly prevented thereby from pursuing any and all gainful occupations?''

In reply to the Company's letter enclosing this form, Mrs. Sanderson wrote, August 2, 1943, advising the company that ''I cannot have this blank filled out—because my husband Wm. E. Sanderson, who disappeared from State Hospital No. 2, St. Joseph, Missouri, on May 13th, 1942 has not been heard of neither has he been heard from by the Hospital or by his relatives or by me. . . . As you know the nature of my husband's disability was permanent and total with no possibility of recovery.''

On August 31, 1943, the Company wrote Mrs. Sanderson as follows:

''Replying to your letter of August 2, we do not know that your husband's disability was 'Permanent and total with no possibility of recovery.' On the contrary, a large proportion of the insane regain their sanity. The fact that your husband has not been heard from suggests that he must now be self-supporting.

''The policies give the Company the right to require due proof once each year of the continuance of disability. Your letter of August 2 does not comply with this provision of the policies, nor with the Company's letter of July 16.

''Under the circumstances, the Company cannot continue to waive the premiums or pay disability benefits under the policies. . . .''

No benefits have been paid nor premiums waived since August 31, 1943. Mrs. Sanderson has kept the policies in force by paying the premiums.

It is stipulated that by plaintiff's letter of August 2 she intended to convey to defendant and defendant understood that plaintiff was able to furnish the opinion of qualified doctors at said hospital based on their knowledge of Sanderson's condition prior to May 13, 1942, that he was, at the time the letter was written, still insane, but that she was not able to supply a medical opinion based upon an examination of the insured made at the time the letter was written, because insured's whereabouts was wholly unknown. For the purpose of the trial of the case it was further stipulated that plaintiff could produce qualified doctors in charge of said hospital and of the medical care and treatment of Sanderson while he was so confined, who would testify that Sanderson was given the various treatments known to them calculated to cure his mental condition but that in their opinion he was still insane on May 13, 1942; and from their examinations and observations of him and of his condition while under their care, they are of the opinion that he was, and if now living, is permanently and incurably insane and will so remain for life.

It was further stipulated that the defendant claims and can adduce qualified medical opinion to the effect that persons suffering from substantially the same mental condition from' which Sanderson is claimed to have suffered prior to his disappearance, have recovered, and in some cases spontaneous, and in some 'cases as the result of treatment for such condition and that in their opinion it cannot 'be predicted with certainty, in a case such as Sanderson's whether the condition will be permanent or whether the patient will recover.

The conflict in the above medical testimony is the only disputed fact in the case.

The Company makes but one assignment of error, asserting, "The court erred in finding in favor of plaintiff on counts one and two . . . because the provisions of the policies requiring *due proof* of the continuance of the insured's disability upon the company's request for such proof, were not complied with." It presents its arguments under three subheads, to the effect that (a)' where the insurer finds the proofs of continued disability unsatisfactory, the burden is on the plaintiff to prove that insured is still disabled; (b) where the insured has placed it out of his power or has refused to supply proofs of continued disability, the company is not obligated to pay further benefits; and '(c) the evidence offered here did not constitute *due proof* that the insured was still disabled.

Plaintiff answers by asserting that (a) defendant never demanded due proof of continuance of disability; (b) that defendant Sanderson was hopelessly and permanently insane and, therefore, it was impossible for *him* to furnish due proof of disability and he was excused from doing so; and (c) that *she* tendered due proof of the continued disability and defendant refused to admit the sufficiency of such proof.

We are of the opinion that defendant's letter of July 16 was a *demand* for *due proof* of continued disability as required by the policies. The defendant could not arbitrarily limit the plaintiff to a particular kind or source of *proof* or *unreasonably* circumscribe the manner of supplying it, but a fair construction of the correspondence leads to the conclusion that a sufficient *demand* was made. Furthermore, the petition alleges: "Plaintiff further states that on or about July 16, 1943, the defendant demanded proof of the continued disability of said insured, and the plaintiff offered to the defendant proof of such continued, permanent and total disability." There is no merit in this contention.

The sufficiency of the proof or the excuse offered for not furnishing it are quite different questions for solution. It is conceded that from 1934 until Dr. Sanderson escaped from the State Hospital in 1942 he was insane and therefore totally and permanently disabled; it is also conceded that, under the terms of the policies, the defendant had the right to demand *due proof* of such continued disability. The

controversial question is, was such proof furnished and, if not, is there a legal excuse for such failure?

What do the policies mean by *due proof*? They *contain no language* amplifying or defining what is meant by those words. We must look to court decisions and text writers for a commonly accepted definition when the policies themselves do not give any. The subject is fully discussed in Vol. 7, Couch's Cyclopedia of Insurance Law, Sec. 1540, p. 5491, where it is said:

". . . . although the policy may specify the nature of the proofs required, if it does not so specify, but simply requires . . . *due notice* and *proof*, then the provision is complied with by furnishing such proof as by reasonable efforts may be obtained, and should be satisfactory, and it is only necessary to give such reasonable and proper evidence as can, at the time of making the proof, be obtained, so as to determine the company's liability and the right of the claimants to recover. . . . It does not rest with the insurers alone to decide this question; rather, the provision requires such notice and proof as may appear to a court to be in accordance with the rules of evidence, and, if such notice and proof have been given, then there has been a compliance with the provision. The question, then, as to what is due proof, is to be determined by the courts according to the rules of evidence, and not by the insurers. And due proof of a claim of loss under a policy means such a statement of facts, reasonably verified, as, if established in court, would prima facie require payment of the claim, and does not mean some particular form of proof which the insurer arbitrarily demands; . . . "

Many recent decisions supporting the text can be found in the Author's Cummulative Supplement, Vol. II, p. 1916. The same subject, and to like effect, is annotated in 109 A. L. R., p. 825, seq. (See, also, Vol. 13, Words and Phrases, p. 593).

In Feinberg v. New York Life Ins. Co., 127 S. W. (2d) 82, this court defines *due proof*, under policies similar to the present ones, to be (92):

"Such information as is reasonably necessary for it to determine whether or not a condition exists which gives rise to its obligation under the disability provisions of a policy."

In Lampert v. John Hancock Mutual Life Ins. Co., 28 F. Supp. 142, affirmed in 109 F. (2d) 1016, cert. denied, 309 U. S. 633, the court, in defining "due proof", said (143):

"It need not be that full, clear and explicit proof, which would be required upon the trial of an issue upon the question, but it must be such reasonable evidence as the party can command at the time, to give assurance that the event has happened, upon which the liability of the insurers depends. . . . The purpose of the condition is that the insurer may be able intelligently to form some estimate of his rights

and liabilities before he is obliged to pay, and some proof must be exhibited."

In Wray v. Equitable Life Assurance Co., 129 Neb. 703, 262 N. W. 833, the Supreme Court of Nebraska said (834):

"The term 'due proof' of such disability, used in an insurance policy, does not require any particular form of proof which the insurer might arbitrarily demand, but such a statement of facts as, if established in court would require payment of the claim."

Did the plaintiff, the guardian, furnish "due proof" of the insured's continued disability within the above principles of law? We shall look to the proof as stipulated. This is not an original claim for disability, but is a claim for *continued disability* of which the defendant had knowledge for a period of approximately eight years. In other words, the defendant had known and admitted the insured was totally disabled and had, without dispute, paid the amount due under the policies from 1934 unitl 1943. When it requested plaintiff to furnish *due proof* of the insured's *continued disability,* she replied, in effect, that she could not supply a doctor's *contemporary report* because Sanderson had escaped from the insane hospital and could not be found, but that the defendant knew his condition and that the doctors in charge of the hospital who had had Sanderson under their personal observation and control and had been treating him during his confinement, would testify that in their opinion, based upon such observation, control and treatment, Sanderson was at that time and would continue to be hopelessly insane. That, in effect, is the proof submitted to the defendant, according to the stipulation filed herein.

But defendant contends that the opinion of the doctors, under such circumstances, would not be competent evidence and, therefore, of no importance in supplying *due proof.* In support of that argument it cites Gladney v. Mutual Life Ins. Co. of New York, 186 S. W. (2d) 538, an opinion by this court. In that case we held an expert witness giving an opinion in the nature of a diagnosis of the ailment of his patient could not base that opinion upon the statements of the patient of past ailments, pains and symptoms, but must rely upon present existent symptoms. That opinion is not authority for the position taken by the defendant in this case, because the doctors, who had Sanderson under their observation and treatment for approximately eight years, had diagnosed his type of insanity and were not basing their opinions upon anything Sanderson had told them, but rather upon their own knowledge acquired during such period of observation and treatment.

There can be no doubt about their opinions being competent evidence and substantial proof of his condition which defendant must consider and give weight, and that such opinions, when submitted as evidence at the trial made a *prima facie* case of continued total

disability because of insanity. This question of the admissibility of the opinions of the doctors was specifically approved in Lemarr v. Metropolitan Life Ins. Co., 143 S. W. (2d) 891, 892-3. Decisions are legion to the effect that a qualified doctor, with the information the doctors in this case had, may testify concerning what afflictions he has found or diagnosed in his patient and give an opinion whether such are permanent and disabling, and that such evidence is substantial proof of such facts. [Stearns v. Prudential Ins. Co., 140 S. W. (2d) 766, 773; Busch & Latta Co. v. Woermann Const. Co., 310 Mo. 419, 444; Vol. 12 Mo. Digest—Evidence, Sec. 506.]

But defendant says that it was entitled to the *contemporary opinion* of the doctors based on *contemporary knowledge*. The policies do not so provide; in fact, they made no requirement or specification concerning what shall constitute *due proof*. Under the above principles of law the rule seems to be universal that if no specific kind of *proof* is provided for, then if plaintiff submits such proof as will make a *prima facie* case, the condition has been complied with and the defendant has no right to forfeit the disability provision of the policies. If defendant desired *contemporary opinion* of doctors, based on *contemporary knowledge,* it could have and should have so provided in the contract.

Defendant also argues that since Sanderson escaped no one knows to a certainty, whether he is now insane or is still alive. That is literally true but, as we have said, the evidence in the case makes a *prima facie* issue of continued insanity, if he is living, and that issue of fact was not destroyed by defendant's medical testimony to the effect that some patients, suffering with the same type of insanity as Sanderson, do recover. Such testimony merely raises a conflict in the evidence. But defendants says that the burden is on the plaintiff to also show that the insured is now alive and that her case on this point cannot be *aided by presumptions.* What of that proposition?

The presumption of death arising from an absence of seven years is not involved because insured has not been absent for that length of time. There is no direct evidence whether he is alive or dead, but is not there a presumption that he is alive?

In Vol. 1, Greenleaf on Evidence, Sec. 41, it is said:

"When, therefore, the existence of a *person,* a personal relation, or a state of things, is once established by proof, the law presumes that the *person,* relation, or state of things *continues to exist as before, until the contrary is shown,* or until a different presumption is raised, from the nature of the subject in question, . . . *Where the issue is upon the life or death of a person, once shown to have been living, the burden of proof lies upon the party who asserts the death.* But after the lapse of seven years, without intelligence concerning the person, the presumption of life ceases, and the burden of proof is devolved on the other party; . . . " (Italics ours).

In Goodloe v. Metropolitan Life Ins. Co., 115 S. W. (2d) 11, 13, in discussing this question, we said:

"Since it is known that insured was alive in the fall of 1925, life is presumed to continue until the contrary is proved, or until the final and complete lapse of seven years."

In Bradley v. Modern Woodmen, 146 Mo. App. 428, 444, the St. Louis Court of Appeals said:

"When a person is known to be alive at a certain time, there is a presumption of the continuance of his life, and to overcome this presumption, evidence must be adduced tending to show at what particular period he died. Mere absence, unattended with other circumstances, will not be sufficient."

In McDaniels v. Cutburth, 270 S. W. 353, the Supreme Court said (359):

"A general rule of presumptions is that, where the existence at one time of a certain condition or state of things of a continuing nature is shown the presumption arises that such condition or state continues to exist until the contrary is shown."

The legal effect of the presumption now under consideration is well stated in Borrson v. Missouri-Kansas-Texas R. Co., 161 S. W. (2d) (Mo. Supp.) 227, where the court quotes with approval this language (230):

"Presumptions are aids to reasoning and argumentation, which assume the truth of certain matters for the purpose of some given inquiry. They may be grounded on general experience, or probability of any kind; or merely on policy or convenience. On whatever basis they rest, they operate in advance of argument or evidence, or irrespective of it, by taking something for granted; by assuming its existence. When the term is legitimately applied it designates a rule or a proposition which still leaves open to further inquiry the matter thus assumed. . . .

"Their effect results necessarily from their characteristic quality, —the quality namely, which imputes to certain facts or groups of fact a prima facie significance or operation. In the conduct, then, of an argument, or of evidence, they throw upon him against whom they operate the duty of meeting their imputation. Should nothing further be adduced, they may settle the question in a certain way; and so he who would not have it settled thus, must show cause."

It seems clear from such citations that there is no merit in defendant's contention that the *plaintiff* must show by direct evidence that the insured is now alive and that her case cannot be aided by presumptions. It cites no authority to support the argument, and we find none.

Defendant also argues the proposition that, assuming Sanderson is sane, but refuses to furnish the proof required, or, that he has removed himself to a distant country or into oblivion so that the

requirements of proof of continuance of disability cannot be performed, then there could be no further liability under the policies; citing Erraca v. Western States Life Ins. Co., 121 Pac. 689, and Rocci v. Massachusetts Accident Co., 116 N. E. 477 (Mass.) No doubt defendant's contention would be correct and the cases cited would be in point if Sanderson were sane; but if he is insane, as the trier of the facts found, then *he* would be excused for failure to make *due proof* of his continued disability. [Schoen v. American National Ins. Co., 108 S. W. (2d) 57, 352 Mo. 935.]

It is argued that since Dr. Sanderson was insane at the time he escaped from the hospital and has not been heard from, it should be inferred that he is either dead or has recovered his sanity sufficiently to earn a livelihood and, therefore, is no longer disabled. What we have said disposes of the inference that he is dead. Under the law the inference is to the contrary. What reference to the inference that he has regained his sanity, this would be mere speculation or guess. The substantial evidence is to the contrary. It is true a person must eat and drink in order to live, but, under the facts in this case, it is just as reasonable to infer that he is receiving food and drink from some institution as it is to infer that he has recovered his sanity and is gainfully employed without advising his wife and relatives of such fact.

It is our conclusion that the plaintiff furnished *due proof* of Dr. Sanderson's continued disability, as required by the policies, and that the evidence is sufficient to sustain the trial court in finding that he is still alive and totally disabled.

We now consider plaintiff's appeal from that part of the judgment which denied her attorneys' fees and penalties for vexatious refusal to pay. Her first contention is that under the policies the defendant was required to make demand for due proof of continued disability before forfeiting the payments thereunder, and that no such demand was made. We have held to the contrary, which disposes of this contention.

When the unusual facts in this case, and the law applicable thereto are considered, it seems perfectly clear that the defendant was justified in entertaining an honest difference of opinion as to its liability. We have been cited to no case, and have found none, where the facts are similar to those in the present case, and, while certain general principles of law have been applied to the present facts, such application has never been made to facts which could be considered controlling in the present cause. It is the settled law of this State that an insurance company, acting in good faith, may contest an issue of fact, as well as an open question of law, without subjecting itself to the penalty of the statute, and that, when the issue is one of fact, the question of vexatious refusal will not be one for the jury to pass upon, unless there is something of a substantial nature in the case

to indicate that the insurer has acted in bad faith and without reasonable cause in raising and relying upon the particular issue. It has been said "vexatiously", as used in Section 6040, Revised Statutes 1939, means without reasonable or probable cause. That statute should never be invoked to intimidate a good faith defense. [Howard v. Aetna Life Ins. Co., 350 Mo. 17, 164 S. W. (2d) 360, 366; St. Clair v. Washington Fidelity National Ins. Co., 89 S. W. (2d) 85, 88; Stahl v. American National Assur. Co., 70 S. W. (2d) 78, 81.] The trial court was justified in denying penalties in this case.

It follows the judgment should be affirmed. All concur.