Fred L. ROHLFING, (Plaintiff) Respondent,

v.

STATE FARM FIRE AND CASUALTY COMPANY and Travelers Fire Insurance Company, (Defendants) Appellants.

No. 30567.

St. Louis Court of Appeals.

Missouri.

Sept. 19, 1961.

As Modified Oct. 17, 1961.

Dearing, Richeson & Weier and Samuel Richeson, Hillsboro, for appellants.

Thurman, Nixon & Blackwell, Hillsboro, for respondent.

RUDDY, Judge.

This is a suit brought by plaintiff seeking to recover a loss, caused by an explosion, which he contends was covered by policies issued by the defendants insuring against any loss to plaintiff's home by reason of fire or explosion. The judgment in the trial court was in favor of plaintiff and against both defendants in the amount of $750 damages, $75 penalty for vexatious delay and $300 attorneys fee. Both defendants appealed.

Plaintiff was the owner of a dwelling in DeSoto, Missouri. In the dwelling was an oil burning furnace, constituting part of the realty, which had been installed in 1954. Plaintiff had trouble with the furnace from the time of its installation. The trouble seemed to increase in the spring of 1958.

Plaintiff installed a different control switch and made other repairs. Thereafter, on the evening of December 15, 1958, the heat was turned on by plaintiff. He went outside the house and after the lapse of a short period of time he heard an explosion which he said "sounded like a jet breaking the sound barrier." Plaintiff's wife described it as a "terrific boom" that shook the house.

While defendants state that it is doubtful an explosion took place, they make no point involving this doubt in this appeal. They do admit that the jury could have inferred from the evidence that there had been an ignition, with some force, of the fuel supplying the heating portion of the furnace. However, they do contend that the evidence failed to make a submissible case of loss or damage by explosion. They contend that the damage to the furnace which rendered it useless was caused by overheating and that the overheating was caused by a non-operating limit control and fan and other causes related by their witnesses.

This point requires a summation of the evidence pertinent to the point presented. As we said, prior to the explosion plaintiff had trouble with the furnace and had incurred some smoke damage to his home and its contents. Plaintiff had called in Pope Davidson, who did furnace repair work on occasions. Plaintiff thought he had called him to look at the furnace about three times during the fall of 1958. On one of the visits Davidson found a four-inch hole in the side of the dome of the furnace and suggested that the hole be welded. Plaintiff said Davidson recommended this as a temporary expedient so he (plaintiff) could get through the winter. Plaintiff had Mr. Degonia weld the opening about one week prior to December 15, 1958.

After plaintiff heard the explosion he ran into the house to see what had happened and found smoke, soot and dirt throughout the house. He then called Oscar Klaus, agent for the State Farm Fire and Casualty Insurance Company. Klaus looked over the

furnace and told plaintiff "to tear the d——— thing out, it wasn't any good, * * *." Plaintiff testified that he looked at the furnace and found the "dome was broken open." The following interrogation of plaintiff then took place:

"Q. What do you mean when you say the dome, Mr. Rohlfing? A. The interior of the furnace.

"Q. Was any part separated from any other part? A. Yes, sir.

"Q. Which part was that where the cracks were? A. At the top of the dome."

Plaintiff said he also called in Pope Davidson after the explosion and was told by him that the furnace was worthless. Pope Davidson recommended the purchase of a new furnace. Another furnace was installed by Lee Hutchinson.

During the course of the recross-examination, plaintiff's attention was called to his deposition, taken prior to the trial, wherein certain answers were given by plaintiff to questions about the location in the furnace of a certain hole, which answers plaintiff admitted were given by him. These answers were to the effect that after the explosion occurred the furnace was of no value and was "blowed out"; the oil chamber was "blown wide open"; the front of the casing was blown off, and there was a hole through the side. The questions propounded in the deposition and the answers thereto were about the condition of the furnace after the explosion. In his cross-examination plaintiff testified that after the furnace was removed he saw the hole in the side of the furnace that had been welded by Degonia.

Mrs. Rohlfing testified that after she heard the "terrific boom" the house was filled with smoke and soot. She was asked to tell the difference in the appearance of the furnace before and after the explosion. She answered, "After the explosion * * * combustion or whatever you want to call it tore this rim loose." Thereafter, Pope Davidson looked at the furnace and told witness and her husband, "the furnace was no longer good" and "wasn't worth a dime."

Lee Hutchinson, in the heating and air conditioning business, testified that he had seen the furnace sometime during the year 1958, prior to the date of the explosion. After the explosion he saw the furnace at which time "the casing of the furnace was apart." He found the "heater exchanger dome" had a bulge on it the size of his fist. He saw the four-inch hole that had been welded by Degonia. He thought the furnace was beyond repair and was worthless. During his cross-examination Hutchinson said there was a hole in the top of the heat exchanger. He examined the appearance and condition of the metal around the hole and found the edges would crumble when touched with the fingers. The metal was thin around the edges and he did not know what caused it to be thin. When pressed by defendant's counsel as to the cause, he refused to say that it was excessive heat.

We need not relate in detail the evidence adduced by defendant. The issue for determination is whether plaintiff made a submissible case of loss or damage by explosion. Defendants concede that the evidence was sufficient from which the jury could have found that an explosion took place. However, they contend that plaintiff failed to sustain his burden of showing that the explosion was the cause of the damage to the furnace.

In determining whether plaintiff made a submissible case for the jury of loss or damage by explosion, we must view the evidence in the light most favorable to plaintiff and accord to him the benefit of all favorable inferences that reasonably arise from all the evidence. Defendant's evidence will be disregarded unless it aids the plaintiff. Rhyne v. Thompson, Mo., 284 S.W.2d 553; Brown v. Pennsylvania Fire

Ins. Co. of Philadelphia, Mo.App., 263 S.W. 2d 893.

Defendants' evidence was to the effect that the damaged condition of the furnace was caused by excessive heat and that the excessive heat produced by the furnace was caused by the failure of the cold air intake to work properly and by other defects in the furnace. Defendants' witnesses testified that plaintiff said nothing to them about an explosion having occurred; that his only claim was for smoke damage. The only damage found by defendants' witnesses was a hole in the furnace which defendants contended was there prior to the explosion and that this hole was caused by overheating the furnace. These witnesses also found intact the welded spot repaired by Degonia.

None of the aforesaid evidence offered by defendants aids the plaintiff in his burden of showing that the explosion was the cause of the loss of and damage to the furnace. However, one of defendants' witnesses, Charles Enzmann, a claim adjuster for the Western Adjustment and Inspection Company, which company was employed by The Travelers Fire Insurance Company, one of the defendants, to adjust the claim of plaintiff, testified on cross-examination, that "an explosion is sudden, abrupt, tearing asunder, tearing apart." He further testified that if a furnace stopped operating immediately after an explosion that the explosion would "have caused some element (on the furnace) not to function which would shut the furnace off." This testimony given by Enzmann may be considered along with plaintiff's evidence in determining whether plaintiff made a submissible case for the jury.

Defendants contend that the evidence shows the damage may have resulted from two causes, explosion and overheating, and that in order to hold defendants liable, plaintiff must have substantial evidence tending to show that the cause for which they would be liable was the actual cause thereof, citing cases. No one will dispute the existence of this rule of law. However, in applying it defendants rely on their evidence which was to the effect that the damage resulted from overheating and not from explosion.

Defendants choose to ignore the rule that we view the evidence in the light most favorable to plaintiff and that we accord him the benefit of all favorable inferences that reasonably arise from all the evidence and, as we said, we will disregard defendants' evidence if it does not aid plaintiff.

Plaintiff's evidence showed that the furnace had been operating prior to December 15, 1958, and did not cease to operate until after the explosion took place on that date. It is true plaintiff's evidence shows he had trouble with the furnace prior to December 15, 1958, but plaintiff testified that one of defendants' witnesses, Pope Davidson, repaired the furnace and suggested that a four-inch hole in the side of the furnace be welded. This was done by Degonia. Davidson told plaintiff this was a temporary expedient so that plaintiff could have heat through the winter. A reasonable inference that may be drawn from this evidence is that the furnace was workable and useable.

Plaintiff's evidence further shows that on December 15, 1958, the furnace was turned on by plaintiff and after a lapse of time, long enough to permit plaintiff to go outside of the dwelling, the explosion took place. It shows that upon inspection of the furnace after the explosion plaintiff's witnesses found the "dome was broken open," the oil chamber was "blown wide open," the front of the casing was blown off and apart, a hole was in the side and the "heater exchanger dome" had a bulge on it the size of a person's fist. Several witnesses thought the furnace worthless and beyond repair. Among these witnesses were Pope Davidson, who had repaired the furnace, and Oscar Klaus, agent for State Farm Fire and Casualty Insurance Company. Plaintiff's evidence was such as to

show a "sudden abrupt tearing asunder, tearing apart" that comes within the description, given by witness Enzmann, of the kind of damage that takes place when an explosion occurs. We think the nature and extent of the damage, as testified to by plaintiff's witnesses, was such as to permit the jury to reasonably find that it was the explosion that caused the damage found by plaintiff and his witnesses, and that the damage incurred by the explosion, rendered the furnace useless.

■ Plaintiff's instruction No. 2–P told the jury to "allow plaintiff as damages such sum as you may find and believe from the evidence will reasonably compensate plaintiff for loss or damage to the furnace mentioned in the evidence occasioned by the explosion mentioned in evidence, * * *." Defendants contend it was error for the trial court to give this instruction because plaintiff failed to prove the market value of his dwelling immediately before and immediately after the damage by explosion. Defendants point out that plaintiff's evidence was confined solely to the value of the furnace and that absent proof of the market value of the premises before and after the occurrence, the instruction is improper and requires reversal, citing Brown v. Pennsylvania Fire Insurance Company, Mo.App., 263 S.W.2d 893. In the Brown case, supra, we cited numerous cases which established the rule that the measure of damages to real property is the difference between the market value of the property immediately before and immediately after the damage is sustained.

In the course of plaintiff's attempt to prove the insurance coverage of the dwelling and the contents thereof defendants objected on the ground it was admitted by both defendants that if there was an explosion it was covered by the policies issued by the defendants. Thereafter, plaintiff in his direct examination was asked to state the value of his house immediately prior to the explosion. Thereupon, the following took place:

"Mr. Richeson (Attorney for defendants): I want to object to that question for the reason there is no pleading in this case of any damage to anything except to the furnace, your honor.

"Mr. Blackwell (Attorney for plaintiff): I can go at it another way, your honor.

"The Court: I think the value of the furnace would be better."

Thereupon, plaintiff proved the value of the furnace before and after the explosion.

Prior to plaintiff's attempt to prove the value of the loss, plaintiff had testified that the furnace was cemented to the floor and was attached to the house. Defendants' objection suggested to the court what course the proof of the value of the loss of the furnace should take and, therefore, defendants cannot now be heard to assert that the court erred in following their suggested course when making the objection to the proof of the value of the premises before and after the explosion. Plaintiff's proof showed the value of the furnace was $750 before the explosion and of no value after the explosion. This point, relied on by defendants, must be overruled.

In the next point urged by defendants they contend that their refusal to pay plaintiff's claim was based upon a reasonable ground and, therefore, Section 375.420 RS Mo 1959, 19 V.A.M.S., providing for statutory penalties for vexatiously refusing to pay said loss, is inapplicable.

No place in the course of plaintiff's testimony can it be found that he told the representatives of the defendant that an explosion had occurred. Plaintiff testified that immediately after the explosion took place he called Oscar Klaus, agent for State Farm Fire and Casualty Company. When Klaus arrived plaintiff told him "to look the situation over." No mention was made by plaintiff to Klaus that an explosion had taken place. Klaus testified that the only claim made by plaintiff was for damage from smoke and that plaintiff said nothing

to him about an explosion. Plaintiff testified that Pope Davidson, who had repaired the furnace prior to December 15, 1958, looked at the furnace after the explosion, but at no time during the course of plaintiff's direct and cross examination did he say that he told Davidson there had been an explosion. Pope Davidson testified that plaintiff made no mention of an explosion. Plaintiff testified that prior to the date of the explosion he had sustained smoke damage in the house from the furnace. That on one occasion the whole house was filled with smoke.

Oscar Klaus testified that he had examined the furnace two or three times prior to the date of the explosion and found it "awful hot." He found the cold air intake was not working and warned plaintiff about the condition of the furnace. All of defendants' witnesses said that when talking to plaintiff he said nothing to them about an explosion. Several of defendants' witnesses testified that in their opinion the damage to the furnace was caused by excessive heating of the furnace.

■ Section 375.420, supra, providing for a penalty and attorney's fee if it appears from the evidence that an insurance company has vexatiously refused to pay a loss is highly penal and is strictly construed. Ireland v. Manufacturers and Merchants Indemnity Company, Mo.App., 298 S.W.2d 529, and Young v. New York Life Ins. Co., 360 Mo. 460, 228 S.W.2d 670; Id., Mo.App., 221 S.W.2d 843.

■ It is the rule in this state, supported by many cases, that where there is an open question of law or an issue of fact determinative of the insurer's liability, the insurer, acting in good faith, may insist upon a judicial determination of such question or issue without being penalized therefor. Young v. New York Life Ins. Co., supra; Ewing v. Dubuque Fire and Marine Ins. Co., Mo.App., 237 S.W.2d 498, and Sanderson v. New York Life Ins. Co., 239 Mo. App. 688, 194 S.W.2d 221.

■ Before a jury is permitted to consider the issue of vexatious refusal to pay the loss, there must be evidence from which it can find that the refusal to pay was willful and without reasonable cause as the facts would appear to a reasonable and prudent man before trial. Merely because the verdict after trial is adverse to defendants' contention is no reason for inflicting the penalty. Ireland v. Manufacturers and Merchants Indemnity Company, supra; Ewing v. Dubuque Fire and Marine Ins. Co., supra, and Delametter v. Home Ins. Co., 233 Mo.App. 645, 126 S.W.2d 262.

We said in Ireland v. Manufacturers and Merchants Indemnity Company, supra (298 S.W.2d loc. cit. 534):

"An insurance company has a right to entertain an honest difference of opinion as to its liability, and, so long as it acts in good faith in contesting either an issue of fact or law, it will not subject itself to the penalty of the statute. As stated by Blair, J., in State ex rel. Continental Life Ins. Co. of Kansas City v. Allen, 303 Mo. 608, 262 S.W. 43, loc. cit. 46: 'It is only when it persists in its refusal to pay the policy after it is aware that it has no meritorious defense that it becomes subject to penalties for vexatious delay.'"

To the same effect, see Ewing v. Dubuque Fire and Marine Ins. Co., supra; Sanderson v. New York Life Ins. Co., supra, and Delametter v. Home Ins. Co., supra.

■ The evidence in the instant case presents a clear issue of fact, whether the damage found was caused by the explosion or was caused by the overheating of the furnace. There is nothing in the evidence to indicate bad faith on the part of defendants in presenting their defense. Defendants had a right to present their defense to a jury for determination without subjecting themselves to the penalties of the statute. The defendants are correct in their

contention that the trial court erred in submitting to the jury the question of vexatious refusal to pay.

In view of our ruling on the question of vexatious refusal to pay the loss we need not discuss another point relied on by defendants, wherein they contend that the verdict of the jury in the amount of $300 attorney's fee was without support in the evidence. This contention is now moot.

Finally, defendants contend that certain portions of the argument· made by plaintiff's attorney were improper and that the trial court erred in overruling their motion for ·a mistrial and other relief.

One portion of the argument complained of occurred as follows:

"Sen. Blackwell: It is always amazing to me how a big insurance company wants to get their hands on the premiums and when it comes to paying insurance and just claims they' want to bring in an adjuster and everybody else to keep a man. from getting a few hundred dollars on a claim a man has sworn to.

"Mr. Richeson: I object to the inflammatory and prejudicial argument, your honor.

"The Court: Let's stay within the record and evidence offered in the case ·· and fair inference therefrom.

"Mr. Richeson: I want to ask the Court to instruct the jury to disregard that argument.

"Sen. Blackwell: Your honor, the man made the payments. We showed that in evidence.

"The Court: I think you had better not refer to insurance companies as such. If you want to refer to the in- · surance companies involved here, but to make any speech about insurance companies in general, I do not think it · is in the record.

"Mr. Richeson: On account of the inflammatory matter introduced by plaintiff's counsel, I will have to ask the Court to discharge the jury and declare a mistrial.

"The Court: It will be overruled. Go ahead. Let's stay within the record, Senator. Let's not get something in here that will cause this to have to be retried again."

■■■ We do not understand the trial court's response to the objection of defendants' counsel when he admonished plaintiff's counsel "not to refer to insurance companies as such." We think plaintiff's reference to "big insurance company" had reference to the defendants in the case and not insurance companies generally. This argument skirts the brink of prejudicial argument, but we do not feel that we can say it was prejudicial as a matter of law. It is only in unusual cases that the court is justified in resorting to the drastic remedy of discharging the jury on account of improper argument. Raymore v. Kansas City Public Service Co., Mo.App., 141 S.W.2d 103. We said in Shelley v. St. Louis Public Service Company, Mo.App., 279 S.W.2d 182, loc. cit. 187:

"The rule is firmly established in Missouri that the trial judge, who has the opportunity of hearing the lawyer present his client's cause to the jury, is vested with wide discretion in ruling on the propriety of the argument with respect to the question of prejudice, and unless it appears that the trial judge has clearly abused his discretion, we should defer to his judgment. (Citing cases.)"

The trial judge hears the whole of the argument, whereas we have only a fragment of the argument before us. He has the opportunity to observe the way in which the argument is delivered and the manner in which it is received by the jurors. An opportunity that is denied us. The trial judge had the matter before him on de-

fendants' motion for new trial and in ruling thereon must have determined that the argument did not improperly influence the jury and his discretion in this regard will not be interfered with by us unless clearly abused. Marler v. Pinkston, Mo., 293 S.W.2d 385; Marlow v. Nafziger Baking Co., 333 Mo. 790, 63 S.W.2d 115; and Jones v. Central States Oil Co., Mo.App., 170 S.W.2d 153. We cannot say that the trial court abused its discretion.

Immediately following the above stated argument plaintiff's counsel told the jury:

"It is true that the State Farm and Travelers Insurance Company have all of the money they need to defend insurance claims. They can defend them day after day after day.

"Mr. Richeson: I object to the inflammatory argument.

"The Court: Let's stay within the record and quit referring to insurance companies generally and the money they have and what they can do. Let's talk about the facts in this case and the record made in this case. Go ahead."

While the court did not rule directly on the objection, we think its action was the equivalent of sustaining defendants' objection. In addition, what we have said about the previous portion of the argument, objected to by defendants, has application to this portion of the argument. We cannot say that the trial court abused its discretion in its rulings on the arguments complained of and, therefore, overrule defendants' contention in connection therewith.

In view of our holding in connection with the question of vexatious refusal to pay, the judgment of the lower court should be reversed and the cause remanded with directions to enter a new judgment in favor of plaintiff and against both defendants for $750. It is so ordered.

ANDERSON, P. J., and WOLFE, J., concur.