**CITY OF INDEPENDENCE, Missouri, for the Use of Wilbur D. BRIGGS, Appellant,**

v.

**KERR CONSTRUCTION PAVING COMPANY, INC., and The Hartford Fire Insurance Company, Respondents.**

No. WD 51016.

Missouri Court of Appeals,
Western District.

Submitted Oct. 10, 1996.

Decided Aug. 12, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 30, 1997.

Application for Transfer Denied Jan. 27, 1998.

Richard W. Mason, Kansas City, for appellant.

Don R. Lolli, Kansas City, for Respondent Kerr Construction Paving Co.

George S. Ruprecht, Kansas City, for Respondent Hartford Fire Insurance Co.

Before SMART, P.J. and SPINDEN and ELLIS, JJ.

SMART, Presiding Judge.

This is an appeal of an action under the "Public Works Prompt Pay Statute," § 34.057, RSMo 1994. The statute provides for penalties for late payment of subcontractors and material suppliers on public works projects, and allows recovery of attorney's fees by the prevailing party in such litigation. In this case, as to the major issue of attorney's fees, the trial court denied attorney's fees to the subcontractor, the prevailing party. Because we conclude that the trial court erred in its interpretation of the statute, we reverse the judgment in part and affirm in part.

### FACTS

Kerr Construction Paving Company, Inc. ("Kerr") entered into a contract with the City of Independence ("City") to perform work, including asphalt paving, concrete curbing and sod work on a project known as the Vaile Mansion Project. The Hartford Fire Insurance Company ("Hartford"), as surety, furnished a payment and performance bond on behalf of Kerr, its principal. Wilbur D. Briggs d/b/a Briggs Sodding ("Briggs") entered into a subcontract with Kerr to do sodding work on the project. The dispute in the instant case concerns the terms of that subcontract.

On August 19, 1991, Kerr entered into the contract with the City. Doug Smith, a vice-president of Kerr, contacted Briggs to solicit a bid for sod work. Two thousand yards of sod were estimated to be needed on the project. Briggs bid $1.40 per square yard of sod. Briggs testified that he told Smith that his bid did not include grading, maintenance or watering. Briggs' bid was accepted and on September 19, 1991, Kerr told Briggs that it had received notice to proceed on the project. Kerr claimed that it had provided Briggs with a written subcontract with the City's specifications, including the rolling and watering of the sod and fifteen days of maintenance watering. Briggs denied having received a subcontract. Briggs' signature does not appear on any document.

Briggs began laying the sod on September 23, 1991 and, over the next few days, laid a total of 2,050 yards of sod. Briggs testified that when he laid the sod it looked good, handled well, and was alive, green and healthy. No one, according to Briggs, complained about the condition of the sod to Briggs. Briggs testified that each day that he laid the sod he called Smith and told him that the sod needed to be watered. Mr. Kerr testified that he understood that Briggs was to water the sod, and that some of the sod was not in good condition when it was installed. Apparently, no one watered the sod and, as a result, the sod died in some areas. The City's inspection report listed the replacement of the dead sod as an item needing correction. Briggs replaced 800 yards of sod after Smith called him and told him to do so.

After Briggs had finished the initial sod work, he sent a bill to Kerr for 2,050 yards of sod at $1.40 per yard ($2,870.00). The City paid Kerr for the installation of 2,050 square yards of sod. Kerr did not pay Briggs' bill.

After Briggs had finished laying the additional 800 yards of sod he sent a second bill to Kerr. He did not bill Kerr for the full 800 yards of additional sod, deciding to charge Kerr for only 400 of the 800 yards so that both Briggs and Kerr would share the burden. His second bill was for 2,450 yards at $1.40 per yard. Kerr still did not pay Briggs. Briggs received a statement of account from Kerr dated November 19, 1991, showing a balance due to Briggs of $885.78. In the statement of account, Kerr reflected that Briggs had earned $1,578.50 (1,025 square yards of sod at $1.40 per square yard). Kerr then had made several deductions from the amount owed to Briggs for Kerr's watering of the sod, and for an alleged overpayment made to Briggs on a previous job.

Kerr's next move was to attempt to get Briggs to sign a lien waiver before Kerr would release any money due to Briggs. Mr. Kerr told Briggs that when the waiver was signed, two checks would be sent to Briggs, one for $885.78 and one for $1,291.50. Briggs refused to execute the waiver, claiming that Kerr was chiseling. After receiving Mr. Kerr's letter concerning the lien waiver, Briggs went to Mr. Kerr's office to pick up a

check for the full amount due to him. Mr. Kerr ordered Briggs off of his property. Briggs' attorney then wrote a claim letter to Hartford, the surety on the bond demanding payment from Hartford. Hartford also declined to pay Briggs.

Briggs filed suit against both Kerr and Hartford [1], pursuant to § 34.057, RSMo 1994, the Public Works Prompt Payment Statute. Count I of Briggs' petition sought damages against Kerr for breach of contract. Count II sought damages against both Kerr and Hartford for breach of contract and breach of the surety bond. In Count III, Briggs sought additional damages for statutory interest and attorney fees for withholding, in bad faith and without reasonable cause, prompt payment balances due under the sub-contract, pursuant to § 34.057, RSMo 1994, against both Kerr and Hartford.

Trial on the matter began December 19, 1994. The jury returned a verdict in favor of Briggs and against Kerr on Briggs' claim for breach of contract. Damages of $3,430.00, with interest of $926.00, were awarded to Briggs. The jury also found against Kerr on Briggs' claim for statutory interest and attorney fees under § 34.057. The jury awarded interest in the amount of $2,066.00 and attorney fees in the amount of $20,000.00. On Briggs' claims for payment of bond damages and for penalties, the jury returned a verdict in favor of Hartford. The jury was discharged, and the trial court entered judgment on the jury verdicts.

On January 17, 1995, Briggs filed a motion to set aside the verdicts in favor of Hartford or, in the alternative, to grant judgment notwithstanding the verdict or for a new trial. On February 1, 1995, Kerr filed a motion for judgment notwithstanding the verdict, or in the alternative, for new trial.

On April 4, 1995, the trial court entered a revised judgment, ordering that Briggs have judgment on his claim for breach of contract against Kerr in the amount of $3,430.00 together with $926.00 interest. The trial court further ordered that Briggs take nothing on

any of his other claims. The trial court rendered a Summary of Proceedings and Order, explaining its decision:

The dispute between the parties centered around the installation of sod at a publicly financed project. There was no written sub-contract between plaintiff and defendant. The entire case was whether the oral discussions relieved the plaintiff of the obligation to water the sod once it was installed and whether the sod installed was defective when installed. The jury resolved those issues in favor of plaintiff. The court still must make certain determinations if the jury awards beyond the plaintiff's assessed damages can be allowed to stand.

In that regard, the verdict form submitted by plaintiff and returned by the jury is beneficial only to the extent that it provides insight into the jury's findings. Verdict A permitted the jury to return verdicts requiring findings on three separate issues. The plaintiff's damages emanating from the balance due under the installation agreement was $3,430. Interest thereon was awarded in the sum of $926. The remaining portion of the verdict awarding attorney fees and interest based on the plaintiff's claim of violation of Chapter 34 R.S.Mo. are subject to review at this point to determine the propriety of their submission in the first instance.

The Court is of the belief that it was in error to submit the verdict form as offered by plaintiff. The error was primarily centered around submission of attorneys' fees and prompt payment act interest issues to the jury. The court in examining the act of submission did so without giving due regard to the defenses in § 34.057(5) and § 34.057(6). These sections permit a defendant such as Kerr to withhold payment from a sub-contractor in the event of disputes and insulate defendants such as Kerr from liability for attorneys fees and late payment interest.

---

1. Apparently, the City of Independence is named as a party because Kerr's contract was with the City and the bond between Kerr and Hartford names them as "held and firmly bound" to the City. Whether it is necessary or appropriate under Rule 52.01 to bring the action in the name of the City is not an issue in this case.

Accordingly, the court finds and determines as a matter of law that defendant Kerr's payment to plaintiff was withheld pursuant to § 34.057(5) in good faith and for reasonable cause. The jury's verdicts awarding plaintiff $20,000 attorney fees and $2,066 interest under the prompt payment act are set aside. Judgment in the cause is revised and amended this date.

Briggs appeals.

### BREACH OF BOND CLAIM

■ In Point I, Briggs contends that the trial court erred in denying Briggs' motion for judgment notwithstanding the verdict and in entering judgment in favor of Hartford on the breach of bond claim because, as a matter of law, Hartford's liability as surety is coextensive with Kerr's liability. Briggs submitted the breach of contract claim against Kerr in Instruction No. 7, which read:

> Your verdict must be for plaintiff, if you believe:
>
> First, plaintiff and defendant Kerr Construction Paving Company, Inc., entered into an agreement whereby plaintiff agreed to install sod for the Vaile Mansion Project with no maintenance and no watering after installation and defendant Kerr Construction Paving Company, Inc., agreed to pay plaintiff $1.40 per square yard of all sod installed on the project, and
>
> Second, plaintiff performed his agreement, and
>
> Third, defendant Kerr Construction Paving Company, Inc., failed to perform its agreement, and
>
> Fourth, plaintiff was thereby damaged.

The instruction on the measure of damages stated as follows:

> If you find in favor on plaintiff's claim for damages, then you must award such sum as you believe will fairly and justly compensate plaintiff for any damages you believe he sustained as a direct result of the breach of contract of defendant Kerr Construction Paving Company, Inc. and the breach of the bond by both defendant Kerr Construction Paving Company, Inc.

and the defendant Hartford Fire Insurance Company.

The verdict form contained separate lines for the entry of a verdict on the breach of contract claim and for the entry of a verdict on the breach of bond claim. The jury returned a verdict for Briggs against Kerr on the breach of contract claim. On the breach of bond claim, the jury found for Hartford. Briggs filed a motion for judgment notwithstanding the verdict, claiming that Hartford's liability is coextensive with Kerr's liability, which was fixed by the jury's verdict on the breach of contract claim.

■ Briggs is correct in the assertion that, as a general rule, a surety's liability for contract damages is coextensive with that of the principal. *Sheffield Assembly of God Church, Inc. v. American Ins. Co.*, 870 S.W.2d 926, 932 (Mo.App.1994). In the absence of an agreement to the contrary, the rights and liabilities of a surety are measured by those of the principal. *City of Kansas City ex rel. Jennings v. Integon Indem. Corp.*, 857 S.W.2d 233, 236 (Mo.App.1993). Plaintiff was entitled to draw the instructions in such a way as to instruct the jury to enter an award as to both Kerr and Hartford, jointly and severally, if it determined that Kerr's action created liability under the contract. Or, alternatively, the jury could be asked to determine the liability of Kerr only; Hartford's liability would then follow as a matter of law. Here, there was no verdict director submitted to the jury on the breach of bond claim, and none was necessary. It also was not necessary for Hartford's name to appear on the form of verdict.

### THE VERDICTS WERE NOT INCONSISTENT

■ Hartford claims that the verdicts are inconsistent, and that Briggs may not now complain on appeal because Briggs failed to give the trial court an opportunity to resubmit the inconsistent verdicts to the jury. Hartford is correct that the general rule is that an objection to inconsistency in verdicts must be made before the jury is discharged. *Bank of Kirksville v. Small*, 742 S.W.2d 127, 128–29 (Mo. banc 1987). If such an objection is not made at this time the error is deemed

waived. *Id.* at 128. Generally, such an error is not correctable by the court but must be resubmitted to the jury. *Id.* at 129. Such a rule is in harmony with the rule that provides that a trial court must be given an opportunity to correct an error while correction is still a possibility. *Douglass v. Safire,* 712 S.W.2d 373, 374 (Mo. banc 1986). Thus, raising the matter in a motion for new trial will not preserve the matter for review because it is too late. *Ivy v. Wal–Mart Stores, Inc.,* 777 S.W.2d 682, 684 (Mo.App.1989).

■ In this case, however, we conclude that the verdicts are not inconsistent. The jury was never told that if it finds in favor of plaintiff and against Kerr, it must also find Hartford liable. In any event, the jury in this case did not even need to address Hartford's liability. Because Hartford's liability, by law, was coextensive with that of Kerr, it was not necessary to submit to the jury the issue of Hartford's liability. There were no issues related to the validity or applicability of the bond. The trial court was entitled to enter judgment against Hartford based on the verdict against Kerr. The request on the form of verdict for the jury to find between Briggs and Hartford was pure surplusage, since there was no verdict directing instruction and no factual issue for the jury to resolve concerning Hartford's liability. Instruction No. 8 was not a verdict director and was designed primarily to instruct the jury on the measure of damages. The instruction may have hinted to the jury that a verdict should also be entered against Hartford, along with Briggs, but it did not so instruct the jury. Since Briggs timely raised his concerns about the verdict, and moved the court for an order entering judgment against Hartford, Briggs' contentions are properly preserved for appeal. There was no point in sending the verdict form back to the jury for another deliberation, because there was no factual issue for the jury to resolve concerning Hartford. The trial court, after the jury's verdict, had a duty to grant Briggs' motion to enter judgment against Hartford coextensively with the judgment against Kerr. We hold that the trial court erred, and will reverse the judgment as to Hartford and remand for a revised judgment entry. Point I is granted.

## PROMPT PAYMENT ACT

In Point II, Briggs contends that the trial court erred in setting aside the jury's verdict in favor of Briggs for violation of the prompt payment statute and in entering judgment in favor of Kerr. Briggs claims that the evidence presented factual issues that were properly presented to the jury, that a submissible case was made, and that the jury's verdict was supported by substantial evidence. Briggs claims that the court erred in taking away its verdict. After the verdict, the court stated:

> The Court is of the belief that it was in error to submit the verdict form as offered by plaintiff. The error was primarily centered around submission of attorneys' fees and prompt payment act interest issues to the jury. The court in examining the act of submission did so without giving due regard to the defenses in § 34.057(5) and § 34.057(6). These sections permit a defendant such as Kerr to withhold payment from a sub-contractor in the event of disputes and insulate defendants such as Kerr from liability for attorneys fees and late payment interest.

> Accordingly, the court finds and determines as a matter of law that defendant Kerr's payment to plaintiff was withheld pursuant to § 34.057(5) in good faith and for reasonable cause.

In order to evaluate the court's ruling in perspective, we look to the text of § 34.057, RSMo 1994 and its evident purposes. The pertinent portions of the lengthy statute are set out as an addendum to this opinion. For our current purposes, it will be sufficient to note that the statute requires a contractor to pay the subcontractors and material suppliers within fifteen days after the contractor receives payment from the public owner. If the contractor does not make such payment in full within fifteen days after receipt of its payment, and if such payment is withheld without reasonable cause, the contractor shall be liable not only for the amount of the due payment, but also for penalty interest in the amount of one and one-half per cent per month. In any litigation about these provi-

sions, the court may, in its discretion, also award attorney's fees to the prevailing party.

 Briggs argues on appeal that the standard of review is that applicable to a judgment notwithstanding the verdict. The JNOV standard looks to whether a submissible case has been made and whether there was a complete absence of probative facts. *Blake v. Irwin*, 913 S.W.2d 923, 928 (Mo.App. 1996). We assume that, like a claim of vexatious refusal to pay under § 375.420, the issue should not be submitted unless there is "something of a substantial nature" in the case indicating that the defendant acted in bad faith and without reasonable cause. *Sanderson v. New York Life Ins. Co.*, 239 Mo.App. 688, 194 S.W.2d 221 (1946).

### BRIGGS MADE A SUBMISSIBLE CASE

 Here, we believe that Briggs made a submissible case for the late payment interest penalty. There is evidence of a substantial nature from which a fact finder could reasonably conclude that Kerr's entire course of dealing with Briggs was designed to take unfair advantage of Briggs. Kerr withheld payment to Briggs after the City had paid Kerr. Kerr claims there was a dispute as to the 800 yards of sod because there was an issue as to who was responsible for watering the sod. The jury could believe Briggs that the sod bid specifically excluded watering. In any event, even disregarding the additional 800 yards of sod, Kerr still owed Briggs a minimum of $2,870.00. Kerr, however, tried to get Briggs to accept less than $2,200.00 in full satisfaction. The evidence also showed that Kerr had unilaterally attempted to offset alleged claims from another job. Kerr communicated to Briggs in a condescending and insulting way. In one of Kerr's letters, after threatening to sue for malicious prosecution, Kerr concluded with the phrase, "It is regrettable that ignorance is not painful." In another letter to Briggs' attorney, Kerr wrote:

> I would imagine your client is of limited intelligence, or else he would not have

tried to cheat us by declaring a fraudulent bill. . . .

While the use of insulting language does not in itself constitute bad faith, the use of such language may be found, in the context of other circumstances indicating bad faith, to be part of a pattern of manipulation, rather than a sincere expression. The overall circumstances of this case include evidence from which a fact finder could have regarded this language as simply an unjustified effort at intimidation, employed to induce Briggs to accept less than the contract price for his work. Although Kerr was paid in full by the City, Kerr attempted to place conditions on payment to Briggs, conditions which were found by the jury not to be a part of the oral agreement between the parties. We conclude that there was substantial evidence from which a jury could find that Kerr was not in good faith and had no reasonable cause to withhold payment.

 Section 34.057 is a remedial statute, adopted for the purpose, *inter alia*, of addressing widespread abuses of subcontractors by contractors. Efforts to legislatively address the problem of abusive practices led to the adoption in 1990 of § 34.057. *See* R. Stockenberg, *Prompt Pay for Government Construction Work in Missouri*, 48 J. Mo. Bar 11 (1992). Statutes that are remedial in purpose should be liberally construed to effectuate the remedial purposes. *State ex rel. LeFevre v. Stubbs*, 642 S.W.2d 103, 106 (Mo. banc 1982). We believe the drafters of this legislation intended to allow courts to impose the interest penalty whenever bad faith is found.[2]

### THE JURY DECIDES THE ISSUE OF GOOD FAITH

 The language of § 34.057.6 indicates that "a court of competent jurisdiction" is to decide whether the withholding was done in "good faith for reasonable cause." Generally, the parties are entitled to have factual disputes resolved by a jury, unless the parties agree to try it to the court. *See Edwards v. South Side Auto Parts Co.*, 180

**2.** Neither party has raised any issue on this appeal as to whether the penalty interest provisions in § 34.057 are intended to supplement, or to supplant, any other statutory provisions allowing recovery of interest. We do not address that issue.

S.W.2d 1015, 1023 (Mo.App.1944). The phrase "a court of competent jurisdiction" includes both judge and jury, because it describes the court as an institution. *See, e.g.,* § 600.051(1), which refers to "[a]ny judge of a court of competent jurisdiction." Therefore, the reference to "a court of competent jurisdiction" does not preclude a jury decision. The jury is generally the fact finder.

> ... [I]t is for the jury, and not the court, to determine issues respecting which the evidence is contradictory, disputable, or conflicting, or is such that different conclusions might reasonably be drawn.

75A Am.Jur.2d *Trial* § 739 (1991).

Kerr and Hartford contend that *Essex Contracting, Inc. v. City of DeSoto,* 815 S.W.2d 135, 139 (Mo.App.1991), can be understood as asserting that the issue of good faith and late payment interest is to be resolved by a judge, and not by a jury. We do not read the case that way. Because *Essex* was a case involving an appeal of a summary judgment order, no issue was ever raised in *Essex* as to the right of a claimant to have a jury trial on the issue of "good faith for reasonable cause."

We conclude that there was nothing improper about allowing the jury to resolve the issue of good faith. That being so, it would be unusual to take from the jury the right to impose the interest penalty. It is likely the drafters contemplated that the body deciding the factual issues would also be the adjudicator of the penalty. In any event, because the legislation contemplates that the penalty interest will be imposed where bad faith has been found, it is not particularly material whether it is imposed by judge or jury.

 We hold that the trial court was not entitled to set aside the penalty interest ruling of the jury. The only option available to the judge, if he disagreed with the jury's verdict on the penalty interest provision, was to set aside the verdict and order a new trial on the grounds that the verdict was against the weight of the evidence. *See, e.g., Courtney v. City of Kansas City,* 775 S.W.2d 269, 272 (Mo.App.1989); § 510.330, RSMo 1994. This the trial court did not do.

## ATTORNEY'S FEE ISSUE IS FOR THE JUDGE

The Respondents also argue that the statute should be construed in such a way as to allow the judge to determine whether to impose an award of attorney's fees. The statute is less than entirely clear. As we have noted, the statute mentions the exercise of "discretion" as to the imposition of an attorney's fee award, even when there has been a specific finding of bad faith in withholding payment. It is evident that the legislature intended there would be no constraint in judgment as to whether to allow no attorney's fees, or a portion of the amount claimed, or the entire amount claimed, being guided by notions of justice and equity, taking into account all pertinent circumstances. Thus, there is nothing inherently illogical about the use of the term "discretion" in the context of a jury award.

 Kerr and Hartford argue, however, that the term "discretion" employed in the statute is a term which is generally not employed in describing the exercise of the jury's function. There is authority for the proposition that the phrase "in its discretion" is strongly suggestive that the judge is to make the decision. This court, in *Dover v. Stanley,* 652 S.W.2d 258 (Mo.App.1983), rejected the notion that the word "court" was to be read inclusively in the context of § 407.025.1. That statute states, in pertinent part:

> The court may, in its discretion, award punitive damages and may award to the prevailing party attorney's fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper.

We noted in that case that the wording of the statutory section suggested that the issue of punitive damages is reserved to the judge. *Id.* at 261. Here, § 34.057 differs from § 407.025 in that the issue of good faith is assigned, in § 34.057, to "a court of competent jurisdiction" rather than to "the court." Also, in § 34.057, the phrase "in its discretion" is used only as to the award of attorney's fees. We conclude, as a general matter of construction of the statute, that the extent of the attorney's fee award is to be decided

by a judge. This is to be done after the fact-finder has resolved the "good faith" issue and accordingly imposed any penalty interest.[3] The judge may award attorney's fees only to the party prevailing on the penalty interest issue.

### SUBMITTED TO THE JURY BY TACIT AGREEMENT

However, our general construction of the statute does not necessarily resolve the issue before us. We find no indication in the record that Kerr and Hartford objected, at the time of submission, to the submission of either the penalty issue or the attorney's fee issue to the jury, as opposed to the judge. Kerr and Hartford did contend that plaintiff had not made a submissible case, but they made no complaint as to the identity of the body to make the decision. A general objection to submissibility, on the theory that plaintiff did not make a submissible case, does not preserve the objection that the case, if submitted at all, should be submitted to the judge. A party may not remain silent in the trial court, taking a chance on a favorable outcome, and subsequently claim error if the outcome is unfavorable. 5 Am.Jur.2d *Appellate Review* § 690 (1995). Here, as far as we can tell from the record, it was only after the jury's verdict that Kerr took the position that the issue was properly for the judge.

In this case, the issue submitted to the jury—the award of attorney's fees—was not a question of law. Nor was any issue of law implicit in the issue to be resolved. The jury was asked, rather, to decide on an award of attorney's fees. This is something, of course, which juries are not uncommonly asked to do. The parties presented appropriate evidence, including expert testimony. They argued their respective positions to the jury. There was nothing inherently defective about the jury's determination of the attorney's fee issue. The trial judge's decision that no penalty interest or attorney's fees were au-

thorized was, on the other hand, a misinterpretation of the statute. Since the issue was submitted to the jury by tacit agreement, and the trial court, in setting aside the verdict, evidenced a misunderstanding of the statute, we conclude that the jury verdict should be reinstated.

### UNDERSTANDING THE STATUTE

The trial court's decision to set aside the jury award was based on an erroneous interpretation of the statutory sections as prohibiting submission to the jury when there is any dispute between the parties of a kind mentioned in § 34.057.1(7), .5 or .6. The trial court interpreted the statute as negating penalties and attorney's fees whenever either party claimed the existence of a "dispute" without regard to the good faith of their position. We do not view the statute that way.

The statutory structure is quite unusual, contributing to confusion about the effect of the statutory language. First the statute, in subsection 1(7), provides that if the contractor, without reasonable cause, fails to timely pay a subcontractor, the contractor shall also pay, in addition to the amount due, interest at the rate of eighteen per cent per annum, compounded monthly.[4] Then, in subsections 2 and 5, the statute seems to provide that, notwithstanding the previous provision, a contractor may withhold payment from a subcontractor for specified reasons, such as, for instance, defective work. Then, subsection 6 starts out with language which is commensurate with the earlier language by indicating that late payment interest shall not be assessed as to payments withheld in good faith for reasonable cause "pursuant to subsections 2 and 5." This language, therefore, modifies the interpretation of subsections 2 and 5. A contractor is not entitled to withhold payment from a subcontractor for defective work unless payment is

---

**3.** It is logical that the fact-finder of the good faith issue should also be the adjudicator of the interest penalty. The term "may impose" in a particular statutory context sometimes can actually be understood to mean "shall impose." "The words 'may, must, and shall' are constantly used interchangeably in statutes and without regard to their literal meaning...." *Kansas City v. J.I.*

*Case Threshing Mach. Co.,* 337 Mo. 913, 87 S.W.2d 195, 205 (1935). The key thing is to "ascertain and give effect to the lawmakers' intent." *Id.*

**4.** The statute refers to the penalty as being "one and one-half percent per month."

withheld "in good faith for reasonable cause." A contractor's claim of defective work may, therefore, be subjected to the scrutiny of a jury, which will decide if the withholding was in good faith for reasonable cause. The second sentence of subsection 6 then restates this same proposition in the affirmative, but this time it mentions something not mentioned before, the possible award of reasonable attorney's fees to the prevailing party. We conclude all of this is to be read in *pari materia*. The effect of the statute, as it applies to contractors withholding payment from subcontractors, could be succinctly summarized as follows:

> Any contractor withholding payment from a subcontractor (beyond the time specified) on a claim of defective work will be liable for late payment penalty interest if it is determined in court that the withholding of payment was not in good faith for reasonable cause. If it is determined that the withholding *was* in good faith for reasonable cause, the contractor will not have any liability under the statute. The party in whose favor the court rules as to the penalty interest provision may also be awarded attorney's fees in the discretion of the judge of the court.

The trial court here believed, because of the unusual way in which the statute was drafted, that in view of the dispute related to Briggs' performance, the court was obligated, as a matter of law, to set aside the jury verdict as to penalty interest and attorney's fees. We conclude this was in error because the jury had already decided, on substantial evidence, that the so-called "dispute" was not a good faith dispute, and that Kerr had no reasonable cause to refuse payment, nor to attempt to offset any charges from an unrelated so-called "dispute." The trial court erroneously ruled that, as a matter of law, Kerr's payment to Briggs was withheld in good faith for reasonable cause. The court, therefore, committed error in setting aside the jury's awards of penalty interest and attorney's fees.

### THE ISSUE OF HARTFORD'S LIABILITY FOR ATTORNEY FEES

■ Briggs contends that Hartford's liability under the prompt payment statute is coextensive with its principal, Kerr, as to all elements, citing *City of Kansas City ex rel. Jennings v. Integon Indem. Corp.*, 857 S.W.2d 233 (Mo.App.1993). In *Integon*, this court rejected an argument made by a surety that the trial court erred in doubling the jury's award of unpaid wages and in its award of attorney fees pursuant to § 290.300, the prevailing wage statute. We found that Integon was liable on the bond under the general principles of surety law which dictate that a surety's liability is coextensive with its principal's liability. *Id.* at 236. The bond contracts in *Integon* contained language providing a stipulation that the prevailing hourly rate of wages, as found by the Department of Labor and Industrial Relations, be paid to all the workmen performing work under the contract. In *Integon*, therefore, the bond covered that specific statutory requirement, and the terms of the bond were controlling. Furthermore, the principles of surety law recited in *Integon* were of a general nature. The surety in *Integon* did not provide any support for its contention that it should not have been responsible for the full amount of the judgment. While it is true that a surety's liability is coextensive with its principal, the obligation of a surety is limited to the terms of its contract. *Kauppi's Estate v. Bridges*, 462 S.W.2d 694, 697 (Mo.1971).

In the instant case, the bond was issued pursuant to the public works statute, § 107.170, which requires a bond for contracts for public works of any kind performed for public entities in the state. The terms of that statute are expressly made a part of any bond "executed and furnished under the provisions of this section...." Section 34.057 does not contain a requirement of a bond to insure prompt payment. There is no mention of bonds or sureties in that statutory section. Nor can § 107.170 be read to require that any other statutory section be made an automatic part of the bond.

The bond in this case is not a statutory bond in relation to § 34.057. *See Camdenton Consol. Sch. Dist. No. 6 v. New York Cas. Co.*, 340 Mo. 1070, 104 S.W.2d 319, 326 (1937) (provisions of a statutory bond must be read

into and construed as a part of that bond). Consequently, we are not persuaded that Hartford must be deemed to have had that section in contemplation when the contract was executed. *Id.*

Section 34.057.1(7) places responsibility for prompt payment solely on the contractor stating:

> If the contractor, without reasonable cause, fails to make any payment to his subcontractors and material suppliers within fifteen days after receipt of payment under the public construction contract, **the contractor shall pay** to his subcontractors and material suppliers, in addition to the payment due them, interest in the amount of one and one-half percent per month, calculated from the expiration of the fifteen-day period until fully paid.

(**emphasis added**). There is no mention in this section of a surety being held liable for the unreasonable withholding of payment.

We hold, therefore, that Hartford is not liable for penalties incurred by Kerr as a result of Kerr's violation of the prompt payment statute. Kerr alone is responsible for that portion of the judgment containing the penal interest and attorney fee provisions. Hartford is, however, jointly and severally liable with Kerr for the payment itself and any non-penal interest accruing as a result of Kerr's failure to pay Briggs. *See Howard Const. Co. v. Teddy Woods Const. Co.*, 817 S.W.2d 556, 564 (Mo.App.1991) (liability of surety for interest is coextensive with that of its principal).

### CONCLUSION

The judgment of the trial court is affirmed to the extent that it enters judgment against Kerr Construction Paving Company, Inc. for the contract amount and interest. The judgment of the trial court is reversed to the extent that it fails to enter judgment against both Kerr Construction Paving Company, Inc. and The Hartford Fire Insurance Company, jointly and severally, for contract damages and interest. The judgment is further reversed to the extent that it fails to award to plaintiff Wilbur D. Briggs the jury's verdict for penalty interest for violation of the prompt payment statute, and the jury's verdict for attorney's fees. Kerr alone, however, is responsible for interest and attorney's fees awarded to Briggs as a result of Kerr's violation of the prompt payment statute. Hartford does not share joint liability with Kerr in this respect.

The case is remanded. On remand, the court shall reinstate the jury's verdict as to defendant Kerr, and the court shall enter judgment for plaintiff Briggs against defendant Kerr and defendant Hartford, jointly and severally, in accordance with the jury's verdict against defendant Kerr. Defendants Kerr and Hartford shall be jointly and severally liable for contract damages and non-penal interest accruing as a result of Kerr's failure to pay Briggs. Kerr alone shall be liable for penalty interest and attorney's fees accruing as a result of its violation of the prompt payment statute.

The cause is remanded to the trial court for entry of judgment in accordance with the foregoing instructions. Each party shall bear its own costs on appeal.

SPINDEN and ELLIS, JJ., concur.

### ADDENDUM

1. Unless [certain conditions apply], all public works contracts ... shall provide for prompt payment by the public owner to the contractor and prompt payment by the contractor to the subcontractor and material supplier in accordance with the following:

\* \* \*

(7) If the contractor, without reasonable cause, fails to make any payment to his subcontractors and material suppliers within fifteen days after receipt of payment under the public construction contract, the contractor shall pay to his subcontractors and material suppliers, in addition to the payment due them, interest in the amount of one and one-half percent per month, calculated from the expiration of the fifteen-day period until fully paid.

\* \* \*

2. Nothing in this section shall prevent the contractor or subcontractor, at the time of application or certification to the public owner or contractor, from withholding such applications or certifications to the owner or contractor for payment to the subcontractor or material supplier. Amounts intended to be withheld shall not be included in such applications or certifications to the public owner or contractor. Reasons for withholding such applications or certifications shall include, but not be limited to, the following: unsatisfactory job progress; defective construction work or material not remedied; disputed work; failure to comply with other material provisions of the contract; third party claims filed or reasonable evidence that a claim will be filed; failure of the subcontractor to make timely payments for labor, equipment and materials; damage to a contractor or another subcontractor or material supplier; reasonable evidence that the contract can not be completed for the unpaid balance of the subcontract sum or a reasonable amount for retention, not to exceed the initial percentage retained by the owner.

\* \* \*

5. Nothing in this section shall prevent the owner from withholding payment or final payment from the contractor, or a subcontractor or material supplier. Reasons for withholding payment or final payment shall include, but not be limited to, the following: liquidated damages; unsatisfactory job progress; defective construction work or material not remedied; disputed work; failure to comply with any material provision of the contract; third party claims filed or reasonable evidence that a claim will be filed; failure to make timely payments for labor, equipment or materials, supplier, reasonable evidence that a subcontractor or material supplier cannot be fully compensated under its contract with the contractor for the unpaid balance of the contract sum; or citation by the enforcing authority for acts of the contractor or subcontractor which do not comply with any material provision of the con-

tract and which result in a violation of any federal, state or local law, regulation or ordinance applicable to that project causing additional costs or damages to the owner.

6. Notwithstanding any other provisions in this section to the contrary, no late payment interest shall be due and owing for payments which are withheld in good faith for reasonable cause pursuant to subsections 2 and 5 of this section. If it is determined by a court of competent jurisdiction that a payment which was withheld pursuant to subsections 2 and 5 of this section was not withheld in good faith for reasonable cause, the court may impose interest at the rate of one and one-half percent per month calculated from the date of the invoice and may, in its discretion, award reasonable attorney fees to the prevailing party....