ESSEX CONTRACTING,
INC., Respondent,

v.

CITY OF DeSOTO, Appellant,

v.

DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS OF The STATE OF MISSOURI and Department of Natural Resources of the State of Missouri, Appellants,

and

Federal Insurance Company, Defendant.

No. 58398.

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 17, 1991.

Mark T. Stoll, Hillsboro, for appellant City of DeSoto.

William L. Webster, Atty. Gen., Mary Joe Smith, Asst. Atty. Gen., Jefferson City, for appellants Dept. of Labor and Dept. of Natural Resources.

Dana Hockensmith, Carol Bader, St. Louis, for respondent Essex Contracting, Inc.

CRIST, Judge.

This appeal arises out of a suit for declaratory judgment and other relief filed by Essex Contracting, Inc. (Essex) against the City of DeSoto (DeSoto). Essex requested a determination that it was entitled to receive $34,683.93 that was being withheld by DeSoto at the direction of the Department of Natural Resources (DNR) and the Department of Labor (DOL), both of whom were joined by DeSoto as third-party defendants. The trial court granted summary judgment for Essex, and Defendants appealed to this court. This court, in *Essex Contracting v. City of DeSoto*, 775 S.W.2d 208 (Mo.App.1989) (*Essex I*), found that a material issue of fact existed, and remanded to the trial court for a determination of this issue. After a hearing, the trial court again found in favor of Essex. Defendants thereupon brought this appeal. We affirm in part and reverse and remand in part.

This statement of the facts draws extensively on the decision of the court in the *Essex I* appeal. Essex entered into a contract with DeSoto on July 5, 1985, to construct a wastewater treatment system. Pursuant to the terms of the contract, Essex was to install within the wastewater

treatment plant certain ductile iron piping for the transmission of wastewater within the plant facility. Essex employed members of Laborers' Local 718 for the installation of the ductile iron piping. These workmen were paid laborers' wages for the installation. The work was completed and certified by DeSoto's engineer.

Funds for construction of the wastewater treatment system were supplied by federal and state grants. DNR was the grant administrator for both federal and state grants, and controlled all the funds for the project. Essex was obligated under the contract to comply with the Missouri Prevailing Wages on Public Works Law, §§ 290.210—290.340 RSMo 1986. Section 290.230.1 requires payment of "[n]ot less than the prevailing hourly rate of wages for work of a similar character in the locality in which the work is performed...."

In 1986, representatives of Pipefitters Local Union No. 562 contacted the Department of Labor and complained that installation of the ductile iron piping should have been performed by members of the Pipefitters Union. However, the Pipefitters Union's position before this court and the trial court is that, whether pipefitters or laborers were used, those doing the work should have been paid pipefitters' wages. DOL, without a hearing, determined that Essex failed to provide proper wages to its employees because the laborers were not paid pipefitters' wages. DOL directed DNR to withhold $34,683.93, an amount it estimated to be the sum of the total unpaid wages and the penalty for the failure to pay the correct wages.

Essex filed suit against DeSoto for the balance of the contract price, and DeSoto joined DOL and DNR as third-party defendants. The trial court entered summary judgment in favor of Essex against DeSoto, and in favor of DeSoto against DOL and DNR for the same amount. DeSoto, DNR and DOL all appealed the judgment. This court filed an opinion June 13, 1989, which reversed and remanded the judgment in favor of Essex for resolution of one issue: whether laborers in Jefferson County working on public works projects customar-

ily install ductile iron pipe. *Essex I*, 775 S.W.2d at 215–216 [9–10]. On remand, the trial court held an evidentiary hearing on the issue as defined by this court.

Essex offered the testimony of three people engaged in similar construction in the area, as well as that of the business agent of the Laborers' Local. Norville McClain, president of Essex Contracting, testified that his company specialized in construction of sewer and water treatment plants primarily for municipal water and sewer districts. He stated that Essex had contracted with the local Laborers' Union for ductile piping work from 1965 through 1989, and that laborers had always done the ductile iron piping work in Jefferson County since Essex was formed.

Robert Butler, vice-president of J.H. Berra Construction Company, testified that Berra Construction utilized laborers for the installation of ductile iron pipe in all its private Jefferson County projects, and in a public project in a neighboring county.

Jerry Govero of Bloomsdale Excavating testified that Bloomsdale had completed both private and public projects in Jefferson County, and had always used laborers for installation of the ductile iron pipe.

Norman Sheldon, Business Agent for Laborers' Local No. 718, testified regarding projects in Jefferson County of which he was aware for which laborers were used to install sewer or water lines. Sheldon testified that laborers have customarily performed the work of installing and working on ductile iron pipe in Jefferson County for at least the last twenty-five years.

Third-party defendants DOL and DNR also offered the testimony of a number of witnesses. Ted Reeves of GWS Contractors testified that on GWS projects, pipefitters are customarily used to install ductile iron piping. Reeves also testified that his company only uses pipefitters, that he is a pipefitter union mechanical contractor, and that GWS has had a contract with the pipefitters' union for twenty years.

Don Summers, business agent for the Plumbers' Union also testified on behalf of DOL and DNR. Summers testified that members of his union had worked on some

of the projects listed by Norville McClain in his testimony. However, Summers testified that this information came from his memory and from other plumbers who had been in Essex's employ. He could not testify whether any of these persons actually performed work on the jobs in question.

Jeff Roberts of Corrigan Co. and Don Reuling of Murphy Co. also testified. They both stated, on cross-examination, that they did not work in Jefferson County and were not familiar with the practices in Jefferson County with regard to the installation of water and sewer lines.

The trial court entered its Findings of Fact and Conclusions of Law on May 11, 1990. The trial court found that laborers in Jefferson County working on public works projects customarily installed ductile iron pipe. The trial court further stated that Essex had complied with the requirements of the Missouri Prevailing Wage on Public Works Law. The court entered judgment for Essex in the amount of $34,683.93 against DeSoto, and in favor of DeSoto against DNR in the same amount.

Essex initially contends DOL's brief violates Supreme Court Rule 84.04(c) in that the statement of facts contained therein is not concise, and contains primarily argument. While we agree that DOL's brief contains a one-sided, argumentative statement of the facts, we decline to impose the extreme sanction of dismissal of the appeal, in exercise of our discretion. *See S.R. v. S.M.R.*, 709 S.W.2d 910 (Mo.App.1986).

■ DOL and DNR's initial point on appeal is that the circuit court erred in overruling DOL's motion to dismiss for lack of subject-matter jurisdiction because Essex failed to exhaust its administrative remedy of statutory review. They contend Essex should have raised its complaint before the Labor and Industrial Relations Commission pursuant to the objection procedure set out in § 290.260, RSMo 1986, and the Administrative Procedures Act, Chapter 536. This issue was before this court in *Essex I.* We held:

We find no merit in this suggestion questioning jurisdiction to consider a declaratory judgment suit in the trial court or in this court. First, the provisions of §§ 290.250 and 290.260 RSMo 1986 relate to a periodic, general determination of prevailing hourly rate of wages to be paid in varying localities. The procedure set forth for determining and publishing advance determinations is distinctly different than deciding an existing dispute. Nor was the finding and order of the Department of Labor made in the context of a contested case under Chapter 536 because there was no charge, notice, hearing, judgment, findings of fact or conclusions of law, or record of proceeding. All of these are attributes of a contested case under Chapter 536. Sections 536.063–536.090 RSMo 1986. In addition, no advance determination was made by the Department of Labor that the work in question required compensation at pipefitters' rate. The suggestion of a possible jurisdictional defect, relying on Chapter 536 RSMo 1986 as an exclusive remedy for plaintiff Essex, is without merit.

*Essex I,* 775 S.W.2d at 215 [7, 8]. Point denied.

■ DOL next contends the trial court erred in limiting the scope of the evidentiary hearing on remand to whether members of the Laborer's Union were properly employed to install the ductile iron pipe under the Essex–DeSoto contract. DOL argues this was incorrect because Essex was legally obligated to pay the correct wage regardless of union affiliation, and because DOL has the sole authority to determine and classify the work. Both the Eastern District Laborers' Council and the Pipefitters Local Union No. 562 filed *amicus curiae* briefs on this issue.

DOL is again trying to litigate matters already settled by this court in *Essex I.* That decision stated:

[T]he Department of Labor and the DNR are not empowered, under the guise of enforcing the provisions of the contract relating to prevailing wage laws, to unilaterally consider and resolve what is, in fact, a union jurisdictional dispute. The Prevailing Wage Law does not authorize the administrator of a public works

project to withhold payments from contractors in situations such as this where: (1) the labor utilized was the proper craft in the locality where the services were rendered.... The law authorizes the Department of Labor to withhold wages only if a certain craft is demonstratively proven to be the craft required or less than the prevailing wage for that craft is paid.

*Essex I*, 775 S.W.2d at 214 [5, 6].

Nowhere in the statute is authority vested in DOL to determine which type of workman will be required to perform a particular task on a public works project. The *Essex I* court further stated: "A contractor has no express statutory obligation to hire a particular type or class of employee to perform particular tasks, although it may have such an obligation under a collective bargaining agreement." *Id.* at 213 [3, 4], *citing City of Kennett v. Labor and Industrial Relations Commission*, 610 S.W.2d 623 (Mo. banc 1981).

The sole issue on remand was "whether laborers in Jefferson County working on public works projects customarily installed ductile iron pipe." *Id.* at 216 [9, 10]. This court found that DOL's order to withhold payment implied that DOL might have found pipefitters ordinarily and routinely did such work, but also found that the record disclosed no facts to support that view. *Id.* at 213 [3, 4]. The trial court was correct in limiting the scope of the evidentiary hearing to that issue mandated by this court.

■ DOL's third and fourth points on appeal are that interest and costs should not have been awarded on the judgment because, absent statutory authorization, interest should not be awarded against the State, and costs should never be assessed against the State. DOL argues that § 408.020, RSMo 1986, which allows interest on written contracts or accounts past due after demand has been made, does not apply because the State was not a party to the contract between Essex and DeSoto.

DOL further contends the contract does specifically provide for withholding of

funds by DNR. Section 34.057.5, RSMo 1990 Cum.Supp. states in part:

Nothing in this section shall prevent the owner from withholding payment or final payment from the contractor, ... Reasons for withholding payment or final payment shall include, but not be limited to, the following ... citation by the enforcing authority for acts of the contractor or subcontractor which do not comply with any material provision of the contract and which result in a violation of any federal, state or local law, regulation or ordinance applicable to that project causing additional cost or damages to the owner.

Section 34.057.6 states in part:

*...no late payment interest shall be due and owing for payments which are withheld in good faith for reasonable cause pursuant to subsections 2 and 5 of this section (34.057.2 and .5). If it is determined by a court of competent jurisdiction that a payment which was withheld pursuant to subsections 2 and 5 of this section was not withheld in good faith for reasonable cause, the court may impose interest at the rate of one and one-half percent per month calculated from the date of the invoice and may, in its discretion, award reasonable attorney's fees to the prevailing party. In any civil action or part of the civil action brought pursuant to this section, if a court determines after a hearing for such purpose that the cause was initiated, or a defense was asserted, or a motion was filed, or any proceeding therein was done frivolously and in bad faith, the court shall require the party who initiated such cause, asserted such defense, filed such motion, or caused such proceeding to be had to pay the other party named in such action the amount of the cost attributable thereto and reasonable expenses incurred by such party, including reasonable attorney's fees.* (Emphasis added.)

We reverse and remand on these issues. While the trial court did impose interest and costs, it made no specific determination that the payment was not withheld in good

**140**

faith for reasonable cause. The implication that the court found a lack of good faith is present in the assessment of the interest and costs. However, absent a specific determination that that was indeed the case, and without a hearing on the matter of costs, we cannot affirm that portion of the court's order.

Judgment affirmed in part, and reversed and remanded in part.

PUDLOWSKI, P.J., and STEPHAN, J., concur.