**TEXTOR CONSTRUCTION, INC.,**
**Plaintiff–Respondent,**

v.

**FORSYTH R–III SCHOOL DISTRICT,**
**Defendant–Appellant.**

No. 23744.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 11, 2001.

Motion for Rehearing or Transfer to Supreme Court Denied Nov. 2, 2001.

Application for Transfer Denied Dec. 18, 2001.

Steven L. Wright, Wright & Gray, Columbia, for appellant.

Michael D. Textor, Shughart Thomson & Kilroy, P.C., Springfield, for respondent.

JOHN E. PARRISH, Presiding Judge.

Forsyth R–III School District (the district) appeals a judgment awarding Textor Construction, Inc., (Textor) damages, including interest awarded under Missouri's public works prompt payment statute, § 34.057,[1] for the district's breach of contract and denying the district's counterclaim against Textor for liquidated damages for failure to timely perform the contract and for repayment of excess amounts the district contended it had paid Textor. This court affirms all parts of the judgment except the interest that was awarded based on § 34.057. That award is reversed.

A judgment in a court-tried case must be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence or the trial court erroneously declared or applied the law. Rule 84.13(d); *Vikings, USA Bootheel v. Modern Day Veterans*, 33 S.W.3d 709, 710 (Mo.App.2000). No request was made to the trial court for a statement of the grounds for its decision and the trial court made no such declaration. Thus, all fact issues are considered as having been found in accordance with the result reached. *See* Rule 73.01(c). "The judgment is to be affirmed on any reasonable theory the record on appeal supports." *In re Trust of Nitsche*, 46 S.W.3d 682, 683 (Mo.App.2001).

The district and Textor contracted for construction of additions and alterations to existing school facilities. Textor subcontracted with Larry Snyder & Co. (Snyder) for excavation work on the project. The work included tiering ball fields labeled "Future Ball Field" and "Future Softball Field" on the "Site Plan" that was part of the contract.

William Edward Textor testified that he was vice president of Textor when it con-

---

1. Reference to statutes are to RSMo 1994.

tracted with the district. Mr. Textor explained what was done in the area the site plan designated for ball fields. Dirt was stripped from the area and stored. Dirt that was removed from the ball field areas was used to construct a parking lot and adjacent areas south of the ball field areas. It was also used as fill near the classroom addition and adjacent lawn areas. Mr. Textor explained, "It was removed proportionately from both ballfields [sic] and then the ballfields [sic] were graded and leveled after that point, whenever the building construction was completed."

Mr. Textor added:

Whenever we stripped off the site, all of the top soil [sic] that we stripped off was stockpiled off to the side. We were instructed to use the best of the top soil [sic] up around the building and the lawn areas because school wanted to get rapid growth, get grass going there as quick as possible.

All areas of the project, other than the ball field areas, were hand-raked in smooth condition. Grass plantings were placed on areas other than the ball field areas by using sod or hydro-mulch and seed. The ball field areas were graded and tiered. They were rock-raked, rolled, and made ready for topsoil.

Textor received a letter dated February 19, 1997, from the superintendent of the district, Dr. Tom Darnell. The letter was hand-delivered by Dr. Darnell to Michael Groom, Textor's project manager. The letter referenced "Ballfield [sic]" and stated:

On inspection of the site work today of the ballfield [sic] area, it appears to be satisfactory to the best of my knowledge and belief and I will recommend approval of the site area to the school board and the architect. Please note this will have to be signed off through the architect for finalization.

If you have questions concerning this matter, please contact me at 417–546–6384.

The letter was signed "Tom Darnell" as "Superintendent."

By letter dated February 21, 1997, the district's architectural firm notified Textor:

It has been brought to my attention that no topsoil has been installed on the athletic fields. I refer you to the enclosed portion of the specifications for Section 221—Site Grading. Unless other arrangements have been made with the Owner, 4″ of topsoil needs to be installed as per specifications on all areas where earthwork has occurred.

Please advise as to why the 4″ of topsoil has not been installed in these areas.

The letter was signed by Ken Hamilton on behalf of the architectural firm, Sam A. Winn & Associates Architects, P.C. Mr. Hamilton was identified as "Senior Technician."

Textor replied by its letter dated February 24, 1997, directed to the attention of Mr. Hamilton. It referenced "Forsyth School Addition Topsoil at Ballpark Area." The letter advised Mr. Hamilton:

In reference to your letter dated February 21, 1997, I would like to call your attention to Addendum No. # [sic] 3 which states[,] "The ballfields [sic] may be lowered as required to avoid bringing in any fill dirt." I would also like to call your attention to note # 6 on the revised sheet A–1—Revised: September 8, 1995, which states[,] "Topsoil excavated during the initial grading shall be stockpiled for application during final grading of unpaved areas."

On September 21, 1995, at 2:18 p.m., I received a bid from Larry Snyder & Company for the sitework on the above captioned project. His bid excluded the import of topsoil. I spoke to Mr. John

Montgomery at 2:20 p.m. in regard to his exclusions. He stated that he had spoken with Mr. Graham at Sam Winn and Associates' office and confirmed that the intent was for the contractor to strip the topsoil from the site and stockpile, balance the site, and reuse existing topsoil. At that time I contacted Mr. David Graham personally to verify that we understood this correctly. He stated that the intent was to reuse the existing topsoil to me as well. We understood that this was changed in order to prevent the enormous cost that would have been encountered had the dirt been hauled in as shown on the original drawings.

We have done exactly as we were instructed. There was, however, very little 'topsoil' on the site. We removed all of the top layer of dirt and stockpiled it as we had been directed. We then used most of the good topsoil up around the building. All of the remaining top layer of dirt was spread over the ballfield [sic].

I understand that the school has contracted separately for additional topsoil to be hauled in by another contractor. Please review the information above and call me at your earliest convenience.

If you have any questions, please let me know.

The letter was signed on behalf of Textor by Bill Textor. The letter identified Mr. Textor as "Vice President."

Textor requested final payment from the district for the balance due on its contract. Its request was dated March 7, 1997. It requested payment of $55,000. The architect issued a "Payment Certificate" dated April 21, 1997, for $16,950. It directed that $38,050 of the amount Textor had requested be withheld.[2] The payment certificate that was admitted in evidence had an attached copy of a letter dated April 21, 1997, from the architectural firm. The letter referenced "Additions and Alterations to Forsyth School District." It states:

As per directive from the Superintendent of Schools on behalf of the Board of Education, they have rejected your offer as stated in the enclosed letter. I have forwarded Payment Certificate # 14 in the amount of $16,950 to be paid as soon as possible and any balance remaining upon completion of work will be refunded to you.

If you have any questions concerning the action by the Board, please call me.

The letter was signed by Sam A. Winn on behalf of the architectural firm. Mr. Winn was identified as "Partner."

The lawsuit that is the basis for this appeal followed. Textor sought recovery of $38,050.[3]

The district filed a two-count counterclaim. Counterclaim Count I sought liquidated damages of $250 per day for time following August 1, 1996, in which the work Textor contracted to perform had not been substantially completed.[4] Counter-

2. The "Payment Certificate" designated the amount withheld, $38,050, as "Accepted Deductions." Two asterisks appear to the right of that amount. They reference a note near the bottom of the form that states, "See attached letter from Superintendent dated April 18, 1997." A copy of the payment certificate was admitted in evidence as part of Defendant's Exhibit No. 7. No letter from the superintendent is included as part of the exhibit.

3. The lawsuit is in two counts. Count I is for breach of contract. Count II is for "unjust enrichment." Summary judgment was granted for the district on Count II prior to trial. It was not appealed.

4. Counterclaim Count I alleged, "The contract required [Textor] to substantially complete the work by August 1, 1996. The work was not substantially completed within such period. The building improvements were

claim Count II sought damages for breach of contract for Textor's failure to provide sufficient topsoil and fill free of stones. The district alleged it had been damaged in the amount of $79,000 by reason of Textor's failure to provide adequate topsoil and fill; that after deducting the $38,050 that remained unpaid, it sustained damages of $40,950.[5]

The district's first two points on appeal are related. This opinion discusses them together.

Point I contends the trial court erred in entering judgment for Textor on Textor's breach of contract claim "because the contract provided as a matter of law that payments could be made only on the certificate of the Architect, in that the evidence showed conclusively that the Architect never certified payment of the disputed $38,050, and there was no evidence of bad faith by the Architect."

■ Point II asserts the trial court erred in awarding Textor damages for breach of contract because Textor did not substantially perform its contract with the district. Point II argues Textor breached the contract because "the contract required [Textor] to bring the site to grade with four inches of topsoil and to meet certain other grading requirements that [Textor] admitted ... were not met, and which the Architect concluded were not met."

In Missouri, it is well settled that parties to a construction contract may agree that questions or disputes as to whether work has been performed in accordance with the contract shall be determined by an engineer, and even

though the engineer is connected to one of the parties to the contract, his determinations are binding upon the parties in the absence of fraud, or such gross mistake as would imply bad faith on the part of the engineer, *or where the engineer misconstrued the contract.* [Emphasis added.]

*Global Const., Inc. v. Missouri Highway & Transp. Com'n.,* 963 S.W.2d 340, 345 (Mo. App.1997). This principle is applicable to architects as well as engineers. *See,* e.g., *Southwest Engineering Co. v. Reorganized School Dist. R 9,* 434 S.W.2d 743, 748–49 (Mo.App.1968).

The construction contract provides with respect to the final payment due on the contract:

Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by [the district] to [Textor] when ... (2) a final Certificate for Payment has been issued by the Architect; such final payment shall be made by [the district] not more than 30 days after the issuance of the Architect's final Certificate for Payment,....

The architect's April 21, 1997, payment certificate was based on a determination by the architect that the contract required topsoil and fill to be placed on the ball fields. If that construction of the contract is correct, the district prevails on Points I and II. If the architect misconstrued the contract, Textor prevails.

The construction contract is a printed form entitled "Standard Form of Agreement Between Owner and Contractor where the basis of payment is a Stipulated

substantially completed no earlier than October 24, 1996, and the site work was never substantially completed."

**5.** Textor filed a third-party claim against Snyder. Snyder filed a counterclaim against Tex-

tor. The trial court found for Snyder on both the third-party claim and Snyder's claim against Textor. No appeal was taken from that part of the judgment.

Sum." It is an American Institute of Architects (AIA) document. The form is designed for general use for construction projects for which there are particular specifications and drawings. It is to be modified to fit particular circumstances. In this case numerous modifications were made to the form and addenda added.

The district relies on part of the contract designated "Division 2—Site Work," "Section 221—*Site Grading*" for the proposition that four inches of topsoil and other grading requirements were required that were not provided or performed. The provisions of the contract on which the district relies state:

1. MATERIALS

. . .

D. Topsoil—To be Furnished from Off Site (if required)
   1. If the quantity of stored topsoil is inadequate, sufficient additional topsoil is to be furnished by excavation contractor.

. . .

2. CUT AND FILL (Earth)
A. Cut

. . .

2. In lawn areas cuts will be made 4″ below finish grade to allow for topsoil if cut extends below existing topsoil.

. . .

C. Placement of Fill Layers

. . .

2. Topsoil
   a. Minimum of the last four inches of fill to bring the project to finish grade will be topsoil.

. . .

3. FINE GRADING

. . .

B. Leave surface in smooth condition free of debris and ready to receive grass planting. Handrake finish grade in all areas of site where construction and earthwork occurred.

Textor contends another part of the contract, "ADDENDUM # 3", dated September 18, 1995, superseded the provisions quoted above regarding installation of topsoil and other fill and relieved it of the requirements the district contends it did not meet. Addendum # 3 provides, as applicable to the issue to which Points I and II are directed:

THIS ADDENDUM SHALL SUPERSEDE THE GENERAL SPECIFICATIONS INSOFAR AS IT IS IN THE DISTINCT DISAGREEMENT WITH SAME. HOWEVER, IT WILL IN NO WAY RELIEVE THE CONTRACTOR OF ANY RESPONSIBILITY UNDR THE PLANS AND SPECIFICATIONS EXCEPT AS HEREIN SPECIFICALLY STATED.

. . .

2. *SHEET A1—SITE PLAN CLARIFICATION:*
   A. The ballfields [sic] can be lowered as required to avoid bringing in any fill dirt.

. . .

■ "Construction of a contract is generally a question of law." *Stephens v. Brekke,* 977 S.W.2d 87, 94 (Mo.App.1998). "[I]t is not within the province of the court to alter a contract by construction, or to make a new contract for the parties." *Rickey v. New York Life Ins. Co.,* 229

Mo.App. 1226, 71 S.W.2d 88, 93 (1934). "[A] court's duty is confined to the interpretation of the contract which the parties have made for themselves, without regard to its wisdom or its folly, and . . . a court may not read into a contract words which the contract does not contain." 71 S.W.2d at 93. " 'A contract must be construed as a whole, and the intention of the parties is to be collected from the entire instrument and not from detached portions, it being necessary to consider all of its parts in order to determine the meaning of any particular part as well as of the whole.' " *Id. quoting* 13 C.J. § 486, pp. 525–27.

Addendum # 3 clearly states, in capitalized letters, that it supersedes the general specifications for the project insofar as its terms distinctly disagree with those specifications. Paragraph No. 2 .A states, "The ballfields [sic] can be lowered as required to avoid bringing in any fill dirt." It distinctly disagrees with the provision of the contract designated "DIVISION 2—SITE WORK," "SECTON 221—SITE GRADING," paragraph 1.D.1 that states, under the subtitle "Topsoil To be Furnished from Off Site (if required)," "If the quantity of stored topsoil is inadequate, sufficient additional topsoil is to be furnished by excavation contractor." (That pronouncement immediately follows the requirement for topsoil from the project site to be stripped and stored for reuse on the site.)

■ Addendum # 3 limited Textor's duty with respect to excavating the ball field sites to lowering those sites to the required grade. Addendum # 3 did not provide for placement of "fill layers." It eliminated any requirement to import fill to the ball field sites the contract would otherwise have required.

A finding consistent with the result the trial court reached is that, construing the contract as a whole, the parties' intention was that the ball field sites were to be cut to the proper grade and left in an unfinished condition thereby "avoid[ing] bringing in any fill dirt." This is consistent with evidence at trial that the district intended to install an irrigation system; that this was not part of the contract with Textor. It is consistent with evidence that an irrigation system was installed after Textor left the site; that the irrigation system was installed before topsoil was placed on the site.

The trial court inferably found the architect misconstrued the contract in not certifying payment of the balance Textor requested as final payment; that the contract did not require "bring[ing] the site to grade with four inches of topsoil." That determination was supported by the evidence adduced; it was not against the weight of the evidence. The trial court did not erroneously declare or apply the law in finding for Textor on its claim for breach of contract or on the district's counterclaim against Textor. Points I and II are denied.

Point III is directed to the part of the judgment that awarded interest to Textor. Textor was awarded "judgment . . . in the sum of $38,050.00 together with interest at the rate of 18% from March 7, 1997." This award was based on § 34.057. Section 34.057.1(1) requires a public owner to make payments to a contractor "for construction, reconstruction or alteration of any public works project" within 30 days following the latter of:

(a) The date of delivery of materials or construction services purchased;

(b) The date, as designated by the public owner, upon which the invoice is duly delivered to the person or place designated by the public owner; or

(c) In those instances in which the contractor approves the public owner's estimate, the date upon which such no-

tice of approval is duly delivered to the person or place designated by the public owner; . . . .

Section 34.057.6 imposes a penalty for late payment of "interest at the rate of one and one-half percent per month calculated from the date of the invoice." Point III contends the trial court erred in awarding 18% interest under § 34.057 because "there was no evidence from which the trial court could have reasonably concluded that [the district's] actions in withholding payment of $38,050 was in bad faith or without reasonable cause because [the district's] actions were consistent with the contract requirements and the determinations of the Architect."

■ For the reasons previously discussed, the contention that the district was not obligated to pay the $38,050 is erroneous. However, the district received no final certificate from the architect for payment of the $38,050, as the payment provision of the contract, Article 6, required.

Section 34.057.1(8) denotes what triggers imposition of the penalty the statute provides. The penalty is imposed if payment is not made upon the earliest of:

(a) Completion of the project and filing with the owner of all required documentation and certifications, in complete and acceptable form, in accordance with the terms and conditions of the contract;

(b) The project is certified by the architect or engineer authorized to make such certification on behalf of the owner as having been completed, including the filing of all documentation and certifications required by the contract, in complete and acceptable form; or

(c) The project is certified by the contracting authority as having been completed, including the filing of all documentation and certifications required by the contract, in complete and acceptable form.

The architect did not provide a final certificate for payment of the $38,050. Consequently, none was submitted with Textor's request for payment. No event prescribed by § 34.057.1(8) occurred. *See Environmental Protection, Inspection & Consulting, Inc. v. City of Kansas City*, 37 S.W.3d 360, 369–72 (Mo.App.2000). The trial court erred in granting late payment interest. Point III is granted. The award of late payment interest at the rate of 18% must be reversed.

Point IV asserts the trial court erred in awarding judgment for Textor on the district's counterclaim seeking damages for overpayment. It argues it was error to find for Textor "for the reasons stated in Points I and II." Points I and II were denied. Point IV is denied for the reasons discussed with respect to Points I and II.

Point V contends the trial court erred in not awarding judgment for Textor on the district's counterclaim for liquidated damages of $250 per day for the time after the date the contract established for the project's completion. The district contends Textor was 84 days late in completing the project to the point it could be occupied; that Textor never substantially completed the site work. The district asserts Textor never requested, nor was granted, an extension of time under the contract.

■ Various delays occurred at the outset of the project. Textor's personnel discussed the delays with the district's superintendent, Dr. Darnell, and with Mr. Winn, the architect, and the architect's representative, Ken Hamilton. Dr. Darnell informed William Textor that he was aware of the delays. Mr. Hamilton told Mr. Textor on several occasions that the district had waived liquidated damages because of initial delays on its part. Textor concluded, on the bases of these communications,

that it was not required to file a written request for extension of time.

Parties may modify or waive rights under a contract or create new terms under it. *Shutt v. Chris Kaye Plastics Corp.*, 962 S.W.2d 887, 890 (Mo. banc 1998); *Zumwinkel v. Leggett*, 345 S.W.2d 89, 93–94 (Mo.1961). There was sufficient evidence for the trial court to find the district waived its right to liquidated damages for failure to complete the project within the time specified by the contract. That finding is consistent with the result reached. Point V is denied.

The part of the judgment awarding interest at the rate of 18% on the sum of $38,050 from March 7, 1997, is reversed. In all other respects the judgment is affirmed.

SHRUM and MONTGOMERY, JJ., concur.