MAYS–MAUNE & ASSOCIATES,
INC., Appellant,

v.

WERNER BROTHERS, INC.,
et al., Respondents.

No. ED 83400.

Missouri Court of Appeals,
Eastern District,
Division Three.

July 13, 2004.

Michael P. Nolan, St. Louis, for appellant.

Paul C. Hamill, St. Louis, Louis J. Weber, Hillsboro, for respondents.

LAWRENCE E. MOONEY, Judge.

Mays–Maune and Assoc., Inc., filed a civil action for money damages against Werner Bros. Inc. (the subcontractor), Bridwell Construction and Design (the general contractor), and Grandview R–II School District (the school district) for failure to pay for building materials supplied by the plaintiff. In its petition, the plaintiff asserted against all three defendants claims of unjust enrichment and violation of the Public Works Prompt Payment Act,[1] and against the subcontractor an additional claim of breach of contract. The plaintiff obtained a default judgment against the subcontractor on its breach-of-contract claim. The trial court granted the remaining defendants' respective motions to dismiss plaintiff's claims of unjust enrichment and violation of the Prompt Payment Act. The trial court also denied the plaintiff's motion for reconsideration of its order of dismissal of the unjust-enrichment claim filed against the general contractor. The plaintiff appeals from these rulings, presenting four points on appeal. We reverse the judgment dismissing the plaintiff's claim of unjust enrichment against the general contractor and remand the cause. The judgment is otherwise affirmed.

In its first point, the plaintiff alleges that the trial court erred in sustaining the general contractor's motion to dismiss the plaintiff's claim of unjust enrichment, because the plaintiff sufficiently pleaded a claim of unjust enrichment against the general contractor, in that: (1) the plaintiff's allegation that the school district has not paid the general contractor for the panels does not preclude the plaintiff from pleading in the alternative that the general contractor benefited from the supply of the panels, and (2) even if the school district did not pay the general contractor, the plaintiff sufficiently pleaded a benefit to the general contractor by the plaintiff's supply of the panels, which enabled the general contractor to construct the school and created in the general contractor a right to be paid for the panels.

In its petition, the plaintiff pleaded certain allegations that were common to all counts. As pertinent to this point, the

1. Section 34.057 RSMo 2000. All statutory references are to RSMo 2000.

plaintiff pleaded "upon information and belief" that the school district had contracted with the general contractor for construction of a school and that the general contractor had thereafter contracted with the subcontractor for the supply of certain materials, including the metal wall panels that are the subject of this dispute. The plaintiff further averred that the subcontractor had in turn contracted with the plaintiff for the delivery of the wall panels for a sum certain. The plaintiff also pleaded that it had, in accordance with the terms of the agreement, delivered the panels, which thereafter the subcontractor accepted and incorporated into the construction of the school. The plaintiff pleaded that the sum certain had not been fully paid.

Later in the petition, the plaintiff pleaded certain other allegations as to its claims of unjust enrichment lodged against all three defendants in a single count. After incorporating the prior factual allegations common to all counts and pleading the constituent elements of an unjust-enrichment claim, the plaintiff further pleaded that the school district had not paid the general contractor or anyone else for the metal panels. The plaintiff also alleged that the general contractor had not paid the subcontractor or anyone else for the panels. The plaintiff thereafter pleaded his damages and prayed judgment be entered against all three defendants due to their unjust enrichment.

The general contractor moved to dismiss the unjust-enrichment claim lodged against it due to a single circumstance. In its motion, the general contractor asserted that since the plaintiff had affirmatively alleged that the school district had not paid the general contractor for the wall panels, the general contractor received no benefit and could therefore not have been unjustly enriched. The trial court dismissed the unjust-enrichment claim against the general contractor.

In its first point on appeal, the plaintiff challenges this dismissal in two regards. First, the plaintiff claims that its allegation that the school district had not paid the general contractor was but an alternative factual allegation necessary to plead its claim of unjust enrichment against the school district, which should not serve as the basis for a dismissal of its cause against the general contractor. Second, the plaintiff asserts that even if the school district did not pay the general contractor, the general contractor nonetheless received a benefit by virtue of the plaintiff's supply of the wall panels in that the general contractor was thereby able to construct the school, which created a right in the general contractor to be paid by the school district. We need only consider the plaintiff's first challenge in this point on appeal to the trial court's dismissal, since it is dispositive of the plaintiff's claim of error.

On a motion to dismiss for failure to state a claim, we are required to construe the petition favorably and to give the pleader the benefit of every reasonable and fair intendment in view of the facts alleged and if the pleader's allegations invoke principles of substantive law that may entitle it to relief, the petition is not to be dismissed. *Laclede Gas Co. v. Hampton Speedway Co.*, 520 S.W.2d 625, 629–630 (Mo.App.1975). If the facts pleaded and the reasonable inferences to be drawn therefrom looked at most favorably from the plaintiff's standpoint show any ground upon which relief may be granted, the plaintiff has the right to proceed. *Id.* at 630. If the pleader's allegations invoke substantive principles of law that if proved may entitle it to relief, the petition is not to be dismissed. *Id.* Under modern pleading principles, a petition is not to be dismissed for failure to state a claim unless

it appears that the plaintiff can prove no set of facts in support of his claim which would entitle it to relief. *Id.* Because the trial court did not state a basis for its dismissal, we presume that dismissal was based on the grounds stated in each motion to dismiss and will affirm if dismissal was appropriate on any ground supported by the motions. *Duvall v. Lawrence*, 86 S.W.3d 74, 78 (Mo.App. E.D.2002).

■ The elements of a claim of unjust enrichment are: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of the fact of such benefit; and (3) acceptance and retention by the defendant of that benefit under circumstances in which retention without payment would be inequitable. *Associate Engineering Co. v. Webbe*, 795 S.W.2d 606, 608 (Mo.App. E.D.1990). In the context of a construction case, the plaintiff must plead non-payment by the defendant to anyone else for the benefit in order to state a claim for unjust enrichment. *Archway Kitchen & Bath, Inc. v. Lands Development Corp.*, 838 S.W.2d 13, 14 (Mo.App. E.D.1992).

The plaintiff pleaded the following in its unjust enrichment claim against the general contractor: (1) the plaintiff conferred a benefit on the general contractor by delivering a certain number of metal wall panels to the school district and the panels were thereafter incorporated into the construction of the school; (2) the general contractor appreciated said benefit; (3) the general contractor accepted and retained said benefit; (4) the general contractor's retention of said benefit without payment to the plaintiff would be unjust and inequitable; and (5) the general contractor has not paid the subcontractor or anyone else for the panels. Such pleadings sufficiently state a cause of action for unjust enrichment against the general contractor.

■ Further, the plaintiff has the right to plead its claims in the alternative. Missouri has allowed alternative pleading since 1855.[2] Since 1973, Rule 55.10 provides:

A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal or equitable grounds.

Missouri procedure permits a pleading to possess the traits of alternativity and inconsistency. *Mueller v. Pittard*, 590 S.W.2d 111, 112 (Mo.App.1979). This leads us to the question of whether the plaintiff effectively pleaded its claims in the alternative.

■ Although it is the better practice to explicitly and carefully allege what facts are being alternatively hypothesized, see *Bratton v. Sharp Enterprises, Inc.*, 552 S.W.2d 306, 312 (Mo.App.1977); *Manchester Iron Works v. E.L. Wagner Const. Co.*, 341 Mo. 389, 107 S.W.2d 89, 96 (1937), it is enough that the alternative character of the allegation be reasonably inferable from the context of the pleadings. For example, in *Laclede Gas. Co.*, 520 S.W.2d at 631, the defendants complained that the petition alleged inconsistent facts, was indefinite and confusing, and was not clearly

**2.** "Either party may allege any fact or title alternatively, declaring his belief of one alternative or the other, and his ignorance whether it be one or the other." Ch. 128, Section 46, RSMo 1855.

alternative. The Court clarified the state of the law:

> We have come a long way since the technicalities embodied in the common law pleadings controlled the determination of the cause. The emphasis, today, is not on pleading but on the disposition of the cause on the merits. At one time, hypothetical, alternative and inconsistent pleading was not permitted. But those rules do not exist under modern pleading. Today, Rules 55.05 and 55.10 (formerly Rule 55.12) permit a plaintiff to 'set forth two or more statements of a claim ... alternatively or hypothetically, either in one count ... or in separate counts....' Rule 55.10. That Rule also permits a party to state 'as many separate claims ... as it has regardless of consistency and whether based on legal or equitable grounds.' Rule 55.10. This Rule adopted Federal Rule 8(e)(2), which authorizes inconsistent pleading. Prior to the new Rule, inconsistent pleading of facts was not permitted in Missouri. Under the new Rule, a party may state its claims alternatively or hypothetically 'regardless of consistency' and the pleader is given the widest freedom to assert its claims 'regardless of consistency.'

The Court went on to find the petition not to be insufficient because of any inconsistency or unclearly alternative allegations. In *State ex rel. Scott v. Sanders*, 560 S.W.2d 899, 903 (Mo.App.1978), the Court found that "[n]othing in the [plaintiff's] petition for damages indicates that the claims are alternative. A close reading of Counts I and II appears to indicate that Count I is a claim for damages for anticipatory breach and Count II for services furnished." However, the Court decided to go ahead and "treat the proceeding as one of alternative pleading whether the counts are for future or past damages or whether they are alternative theories of an express or implied contract for future or past damages." *Id.*

■ The more generous approach in these cases appears to be to construe the plaintiff's pleadings as in the alternative due to the context of the pleadings, even though not specifically stated to be in the alternative. Such a view would be in keeping with the policies that require us to give the pleader the benefit of every reasonable and fair intendment in view of the facts alleged, *Laclede Gas Co.*, 520 S.W.2d at 629, and that "[a]ll pleadings shall be so construed as to do substantial justice," *Boyd v. Lane*, 869 S.W.2d 305, 306 (Mo. App. S.D.1994), citing Rule 55.24.

■ However, we should distinguish between a claim being pleaded in the alternative and a fact being pleaded in the alternative. Rule 55.10 clearly contemplates that different and inconsistent theories of liability may be pleaded. Further, where there are multiple defendants, a party's pleading against one defendant cannot be used to impeach that party's testimony against another defendant. *Lewis v. Wahl*, 842 S.W.2d 82, 87 (Mo.banc 1992). One is not allowed to use such alternative allegations in a pleading against the pleader. *Id.* However, *fact allegations* that are inconsistent may be considered as admissions against interest, *Rauch Lumber Co. v. Medallion Development Corp.*, 808 S.W.2d 10, 12 (Mo.App. E.D.1991), but not if they are made in good faith and based on genuine doubt. *Id.* The *Rauch Lumber* Court explained as follows:

> Missouri recognizes a party's right to plead in the alternative and to state inconsistent claims or defenses. Rule 55.10. As a general rule, however, "allegations or admissions of fact contained in pleadings upon which a case is tried are binding on the pleader." *Sayers v.*

*Bagcraft Corp. of Am., Inc.,* 597 S.W.2d 280, 282 (Mo.App. S.D.1980). Although at first blush the rules seem inconsistent, they are not contradictory.

*Sayers* distinguishes between pleaded facts and pleaded legal conclusions. *Id.* at 283. This distinction is supported at 29 AM.JUR.2d Evidence § 692 (1967), which says:

> [A]lternative fact allegations made in good faith and based on genuine doubt are not admissions against interest so as to be admissible in evidence against the pleader. The pleader states [the] facts in the alternative because he is uncertain as to the true facts, so that he is not 'admitting' anything other than his uncertainty.... (Emphasis added).

Alternative fact allegations made in good faith and based on genuine doubt should not be considered admissions against interest. On the other hand, alternative fact allegations not based on genuine doubt may be considered admissions against interest. Such a holding is consistent with Rule 55.03, which states that an attorney, by signing a pleading, certifies that "to the best of his knowledge, information, and belief," the pleadings are "well grounded in fact," and not interposed "to cause unnecessary delay or needless increase in the cost of litigation."

In the instant case, it was necessary for the plaintiff to allege that the school district had not paid the general contractor to plead an unjust-enrichment claim against the school district. *Archway Kitchen & Bath, Inc.,* 838 S.W.2d at 14. However, the general contractor was granted its dismissal based on this same allegation on the theory that it was thereby deprived of any benefit sufficient to support an unjust-enrichment claim. In an ideal pleading, the plaintiff might have clarified that its factual assertion that the school district had not paid the general contractor only applied to its unjust-enrichment claim against the school district, and not to its unjust-enrichment claim against the general contractor.[3] Or, it might have pleaded the unjust-enrichment claim against the defendants in entirely separate counts and included in each count facts that were alleged only as to that count's pleaded claim.

But this is not an ideal pleading nor need it be. We are to allow pleadings their broadest intendment. Here the plaintiff sought to state its unjust-enrichment claims against three different parties, but it only had a direct contractual relationship with the subcontractor. The other two defendants were further upstream in the chain of contractual relationships. Further, the plaintiff signaled its limited knowledge of the upstream transactions when the plaintiff's averments of these upstream contractual relationships were only made "upon information and belief." Clearly, the plaintiff would have little ability to know what payments were made or withheld as to upstream contractual relationships that were only averred "upon information and belief." Given these circumstances, the plaintiff's allegation that the school district had not paid the general contractor was made in good faith and based on genuine doubt. As such, it should have only been construed as an alternative fact allegation applying only to its unjust-enrichment claim against the school district. Therefore, it could not serve as an admission against interest as

---

**3.** This is not to suggest our rejection of the plaintiff's alternative argument that the general contractor, even if unpaid, received a benefit by virtue of its ability to perform its contract with the school district and its achievement of a right to be paid. We do not reach this issue.

to the plaintiff's unjust-enrichment claim against the general contractor. *Rauch Lumber Co.,* 808 S.W.2d at 12. Thus, even though the fact that the school district had not paid the general contractor was not explicitly stated to be an alternative fact allegation, its alternativity can be reasonably inferred from the context of the pleadings in the case. Again, this is in keeping with the policies that require us to give the pleader the benefit of every reasonable and fair intendment in view of the facts alleged, *Laclede Gas Co.,* 520 S.W.2d at 629, and that all pleadings shall be so construed as to do substantial justice. *Boyd,* 869 S.W.2d at 306. Therefore, we hold that the trial court erred in granting the general contractor's motion to dismiss the plaintiff's claim of unjust enrichment against the general contractor. Point granted.

■ In its second point, the plaintiff asserts that the trial court erred in denying its motion for reconsideration to amend its petition because discovery materials had been produced by the general contractor showing that the school district had paid the general contractor most or all of the money owed for the panels, and leave to amend was warranted under Rule 55.33 [4] to further the interests of justice. Due to our resolution of the plaintiff's first point on appeal, its second point is rendered moot. Point dismissed.

■ The plaintiff's fourth point [5] concerns its unjust-enrichment claim against the school district. In its point, the plaintiff claims that the trial court erred in sustaining the school district's motion to dismiss the plaintiff's unjust-enrichment claim, because the plaintiff sufficiently stated an unjust-enrichment claim against the school district, in that the plaintiff's

petition satisfied the statutory requirements of Section 432.070 by pleading the existence of the contract between the school district and the general contractor.

■ The school district denied the plaintiff's claim and moved to dismiss the plaintiff's claim of unjust enrichment on the assertion that Section 432.070 precludes a claim of unjust enrichment against a school district. Section 432.070 provides in pertinent part: "No ... school district ... shall make any contract, unless the same ... including the consideration, shall be in writing ... and shall be subscribed by the parties thereto...." This section has been interpreted by Missouri courts to preclude recovery against a school district on any theory of implied contract. *Strain–Japan R–16 School District,* 51 S.W.3d at 922. The fact that the school district has received the benefit of the plaintiff's performance does not make it liable on the theory of implied contract. *Duckett Creek Sewer Dist. of St. Charles County v. Golden Triangle Development Corp.,* 32 S.W.3d 178, 183 (Mo.App. E.D. 2000). The statutory requirement that the contract be in writing is mandatory and strict compliance is required in order to bind the school district. *Strain–Japan R–16 School District,* 51 S.W.3d at 922.

The plaintiff claims its petition satisfied the statutory requirements of Section 432.070 by pleading the existence of a contract between the school district and the general contractor. We reject this claim. The plaintiff is not seeking enforcement of the contract between the school district and the general contractor. The plaintiff's claim against the school district is for unjust enrichment, which is a theory of implied contract. *Childress Painting and Associates, Inc. v. John Q. Hammons Ho-*

---

4. All rule references are to Mo. R. Civ. P.2003.

5. We address the plaintiff's third point last for clarity's sake.

*tels Two, L.P.,* 106 S.W.3d 558, 562 (Mo. App. W.D.2003). Such a claim is prohibited. *Strain–Japan R–16 School District,* 51 S.W.3d at 922. As such, the trial court did not err in granting the school district's motion to dismiss the plaintiff's claim of unjust enrichment against it. Point denied.

Now we address whether the plaintiff sufficiently pleaded its claims under the Prompt Payment Act against the general contractor and the school district. In its third point, the plaintiff contends that the trial court erred in sustaining the general contractor and the school district's respective motions to dismiss the plaintiff's Prompt Payment Act claims, because the plaintiff sufficiently pleaded its claims under the act, in that the act does not require privity of contract. Section 34.057, which is reprinted in the Appendix to this opinion, known as the Prompt Payment Act, is a remedial statute, adopted for the purpose of addressing widespread abuses of subcontractors by contractors. *City of Independence for Use of Briggs v. Kerr Const. Paving Co., Inc.,* 957 S.W.2d 315, 321 (Mo.App. W.D.1997). Efforts to legislatively address the problem of abusive practices led to the adoption in 1990 of Section 34.057. *Id.,* citing R. Stockenberg, Prompt Pay for Government Construction Work in Missouri, 48 J. Mo. Bar 11 (1992). Statutes that are remedial in purpose should be liberally construed to effectuate the remedial purposes. *Id.,* citing *State ex rel. LeFevre v. Stubbs,* 642 S.W.2d 103, 106 (Mo.banc 1982). The drafters of this legislation intended to allow courts to impose the interest penalty whenever bad faith is found. *Id.*

The school district and the general contractor based their respective motions to dismiss the plaintiff's Prompt Payment Act claims on the assertion that the act doesn't provide the plaintiff a cause of action

against them, either on its face or because the act requires privity of contract, and the plaintiff did not and indeed could not, plead such privity of contract.

We hold that the plaintiff cannot maintain an action against the school district under the Prompt Payment Act because the act provides for an action against an owner only by the contractor, not a subcontractor or supplier. The act provides in pertinent part as follows: "[A]ll public works contracts made and awarded ... for construction, reconstruction or alteration of any public works project, shall provide for prompt payment by the public owner to the contractor and prompt payment by the contractor to the subcontractor and material supplier...." There is no provision in the act imposing on a public owner any duty or obligation to a subcontractor or material supplier. All of the Missouri cases interpreting the act involve either a claim by the contractor against the owner, or by a subcontractor against the contractor. See *Essex Contracting, Inc. v. City of DeSoto,* 815 S.W.2d 135 (Mo.App. E.D.1991) (general contractor against owner); *Kerr,* 957 S.W.2d 315 (subcontractor against general contractor); *Environmental Protection, Inspection and Consulting, Inc. v. City of Kansas City,* 37 S.W.3d 360 (Mo.App. W.D.2000) (general contractor against owner); *Strain–Japan R–16 School District v. Landmark Systems, Inc.,* 51 S.W.3d 916 (Mo.App. E.D. 2001) (general contractor against owner), and *Textor Const., Inc. v. Forsyth R–III School Dist.,* 60 S.W.3d 692 (Mo.App. S.D. 2001) (prime contractor against owner).

The act does not, however, *per se* preclude an action against the general contractor, as a contractor, by the plaintiff, as a subcontractor or supplier. However, the plaintiff had no contract with the general contractor, and the act by its terms appears to contemplate privity of contract

between the parties. The statute governs "all public works contracts made and awarded" under certain circumstances, and any cause of action set forth in the statute appears to be premised on a contractual relationship. The act goes on to frequently refer to the "contract" between the parties and the terms thereof in illustrating and circumscribing the cause of action the act creates. Further, all of the Missouri cases interpreting the act involve a contract between the parties. See *Essex*, 815 S.W.2d 135 (contract between owner and general contractor); *Kerr*, 957 S.W.2d 315 (contract between subcontractor and general contractor); *Environmental Protection, Inspection and Consulting, Inc.*, 37 S.W.3d 360 (contract between owner and general contractor); *Strain–Japan R–16 School District*, 51 S.W.3d 916 (contract between owner and general contractor), and *Textor Const., Inc.*, 60 S.W.3d 692 (contract between owner and prime contractor). We also find merit in the general contractor's argument that the use of the term "his" in subsection 1.(7) of the statute ("If the contractor, without reasonable cause, fails to make any payment to his subcontractors"), in regard to the contractor's subcontractors and material suppliers, as opposed to "any" or "all", implies the existence of a contractual relationship. Finally, our holding recognizes that the primary fault for nonpayment lies with a party to a contract that has failed in its duty to make payment rather than upstream parties in a chain of contractual relationships. We hold the Prompt Payment Act contemplates a contract between the parties to such a cause of action. In the instant case, the plaintiff did not have a contract with the general contractor or the school district, and as such, it cannot maintain a cause of action under the Prompt Payment Act against the general contractor or the school district. Point denied.

The judgment of the trial court dismissing the plaintiff's claim for unjust enrichment against the general contractor is reversed. In all other respects the trial court's judgment is affirmed.

CLIFFORD H. AHRENS, P.J., and WILLIAM H. CRANDALL, JR., J., concur.

### Appendix

The full text of Section 34.057 is as follows:

**34.057. Public works contracts—prompt payment by public owner to contractor—prompt payment by contractor to subcontractor—progress payments—retainage—late payment charges—withholding of payments**

1. Unless contrary to any federal funding requirements or unless funds from a state grant are not timely received by the contracting public municipality but notwithstanding any other law to the contrary, all public works contracts made and awarded by the appropriate officer, board or agency of the state or of a political subdivision of the state or of any district therein, including any muncipality, county and any board referred to as the public owner, for construction, reconstruction or alteration of any public works project, shall provide for prompt payment by the public owner to the contractor and prompt payment by the contractor to the subcontractor and material supplier in accordance with the following:

(1) A public owner shall make progress payments to the contractor on at least a monthly basis as the work progresses, or, on a lump sum basis according to the terms of the lump sum contract. Except in the case of lump sum contracts, payments shall be based upon estimates prepared at least monthly of work performed and material delivered, as determined by the project architect or engineer. Retainage withheld on public works projects shall not exceed five percent of the value of the contract

or subcontract unless the public owner and the architect or engineer determine that a higher rate of retainage is required to ensure performance of the contract. Retainage, however, shall not exceed ten percent of the value of the contract or subcontract. Except as provided in subsection 4 of this section, the public owner shall pay the contractor the amount due, less a retainage not to exceed ten percent, within thirty days following the latter of the following:

(a) The date of delivery of materials or construction services purchased;

(b) The date, as designated by the public owner, upon which the invoice is duly delivered to the person or place designated by the public owner; or

(c) In those instances in which the contractor approves the public owner's estimate, the date upon which such notice of approval is duly delivered to the person or place designated by the public owner;

(2) Payments shall be considered received within the context of this section when they are duly posted with the United States Postal Service or other agreed upon delivery service or when they are hand-delivered to an authorized person or place as agreed to by the contracting parties;

(3) If, in the discretion of the owner and the project architect or engineer and the contractor, it is determined that a subcontractor's performance has been completed and the subcontractor can be released prior to substantial completion of the public works contract without risk to the public owner, the contractor shall request such adjustment in retainage, if any, from the public owner as necessary to enable the contractor to pay the subcontractor in full. The public owner may reduce or eliminate retainage on any contract payment if, in the public owner's opinion, the work is proceeding satisfactorily. If retainage is released and there are any remaining minor items to be completed, an amount equal to two hundred percent of the value of each item as determined by the public owner's duly authorized representative shall be withheld until such item or items are completed;

(4) The public owner shall pay the retainage, less any offsets or deductions authorized in the contract or otherwise authorized by law, to the contractor after substantial completion of the contract work and acceptance by the public owner's authorized contract representative, or as may otherwise be provided by the contract specifications for state highway, road or bridge projects administered by the state highways and transportation commission. Such payment shall be made within thirty days after acceptance, and the invoice and all other appropriate documentation and certifications in complete and acceptable form are provided, as may be required by the contract documents. If at that time there are any remaining minor items to be completed, an amount equal to two hundred percent of the value of each item as determined by the public owner's representative shall be withheld until such items are completed;

(5) All estimates or invoices for supplies and services purchased, approved and processed, or final payments, shall be paid promptly and shall be subject to late payment charges provided in this section. Except as provided in subsection 4 of this section, if the contractor has not been paid within thirty days as set forth in subdivision (1) of subsection 1 of this section, the contracting agency shall pay the contractor, in addition to the payment due him, interest at the rate of one and one-half percent per month calculated from the expiration of the thirty-day period until fully paid;

(6) When a contractor receives any payment, the contractor shall pay each subcontractor and material supplier in

proportion to the work completed by each subcontractor and material supplier his application less any retention not to exceed ten percent. If the contractor receives less than the full payment due under the public construction contract, the contractor shall be obligated to disburse on a pro rata basis those funds received, with the contractor, subcontractors and material suppliers each receiving a prorated portion based on the amount of payment. When, however, the public owner does not release the full payment due under the contract because there are specific areas of work or materials he is rejecting or because he has otherwise determined such areas are not suitable for payment then those specific subcontractors or suppliers involved shall not be paid for that portion of the work rejected or deemed not suitable for payment and all other subcontractors and suppliers shall be paid in full;

(7) If the contractor, without reasonable cause, fails to make any payment to his subcontractors and material suppliers within fifteen days after receipt of payment under the public construction contract, the contractor shall pay to his subcontractors and material suppliers, in addition to the payment due them, interest in the amount of one and one-half percent per month, calculated from the expiration of the fifteen-day period until fully paid. This subdivision shall also apply to any payments made by subcontractors and material suppliers to their subcontractors and material suppliers and to all payments made to lower tier subcontractors and material suppliers throughout the contracting chain;

(8) The public owner shall make final payment of all moneys owed to the contractor, less any offsets or deductions authorized in the contract or otherwise authorized by law, within thirty days of the due date. Final payment shall be considered due upon the earliest of the following events:

(a) Completion of the project and filing with the owner of all required documentation and certifications, in complete and acceptable form, in accordance with the terms and conditions of the contract;

(b) The project is certified by the architect or engineer authorized to make such certification on behalf of the owner as having been completed, including the filing of all documentation and certifications required by the contract, in complete and acceptable form; or

(c) The project is certified by the contracting authority as having been completed, including the filing of all documentation and certifications required by the contract, in complete and acceptable form.

2. Nothing in this section shall prevent the contractor or subcontractor, at the time of application or certification to the public owner or contractor, from withholding such applications or certifications to the owner or contractor for payment to the subcontractor or material supplier. Amounts intended to be withheld shall not be included in such applications or certifications to the public owner or contractor. Reasons for withholding such applications or certifications shall include, but not be limited to, the following: unsatisfactory job progress; defective construction work or material not remedied; disputed work; failure to comply with other material provisions of the contract; third party claims filed or reasonable evidence that a claim will be filed; failure of the subcontractor to make timely payments for labor, equipment and materials; damage to a contractor or another subcontractor or material supplier; reasonable evi-

dence that the contract can not be completed for the unpaid balance of the subcontract sum or a reasonable amount for retention, not to exceed the initial percentage retained by the owner.

3. Should the contractor determine, after application or certification has been made and after payment has been received from the public owner, or after payment has been received by a contractor based upon the public owner's estimate of materials in place and work performed as provided by contract, that all or a portion of the moneys need to be withheld from a specific subcontractor or material supplier for any of the reasons enumerated in this section, and such moneys are withheld from such subcontractor or material supplier, then such undistributed amounts shall be specifically identified in writing and deducted from the next application or certification made to the public owner or from the next estimate by the public owner of payment due the contractor, until a resolution of the matter has been achieved. Disputes shall be resolved in accordance with the terms of the contract documents. Upon such resolution the amounts withheld by the contractor from the subcontractor or material supplier shall be included in the next application or certification made to the public owner or the next estimate by the public owner and shall be paid promptly in accordance with the provisions of this section. This subsection shall also apply to applications or certifications made by subcontractors or material suppliers to the contractor and throughout the various tiers of the contracting chain.

4. The contracts which provide for payments to the contractor based upon the public owner's estimate of materials in place and work performed rather than applications or certifications submitted by the contractor, the public owner shall pay the contractor within thirty days following the date upon which the estimate is required by contract to be completed by the public owner, the amount due less a retainage not to exceed five percent. All such estimates by the public owner shall be paid promptly and shall be subject to late payment charges as provided in this subsection. After the thirtieth day following the date upon which the estimate is required by contract to be completed by the public owner, the contracting agency shall pay the contractor, in addition to the payment due him, interest at a rate of one and one-half percent per month calculated from the expiration of the thirty-day period until fully paid.

5. Nothing in this section shall prevent the owner from withholding payment or final payment from the contractor, or a subcontractor or material supplier. Reasons for withholding payment or final payment shall include, but not be limited to, the following: liquidated damages; unsatisfactory job progress; defective construction work or material not remedied; disputed work; failure to comply with any material provision of the contract; third party claims filed or reasonable evidence that a claim will be filed; failure to make timely payments for labor, equipment or materials; damage to a contractor, subcontractor or material supplier; reasonable evidence that a subcontractor or material supplier cannot be fully compensated under its contract with the contractor for the unpaid balance of the contract sum; or citation by the enforcing authority for acts of the contractor or subcontractor which do not comply with any material provision of the contract and which result in a violation of any federal, state or local

law, regulation or ordinance applicable to that project causing additional costs or damages to the owner.

6. Notwithstanding any other provisions in this section to the contrary, no late payment interest shall be due and owing for payments which are withheld in good faith for reasonable cause pursuant to subsections 2 and 5 of this section. If it is determined by a court of competent jurisdiction that a payment which was withheld pursuant to subsections 2 and 5 of this section was not withheld in good faith for reasonable cause, the court may impose interest at the rate of one and one-half percent per month calculated from the date of the invoice and may, in its discretion, award reasonable attorney fees to the prevailing party. In any civil action or part of a civil action brought pursuant to this section, if a court determines after a hearing for such purpose that the cause was initiated, or a defense was asserted, or a motion was filed, or any proceeding therein was done frivolously and in bad faith, the court shall require the party who initiated such cause, asserted such defense, filed such motion, or caused such proceeding to be had to pay the other party named in such action the amount of the costs attributable thereto and reasonable expenses incurred by such party, including reasonable attorney fees.